**UNITED STATES, to Use of ANNISTON PIPE & FOUNDRY CO., v. NATIONAL SURETY CO.**

(Circuit Court of Appeals, Eighth Circuit. February 27, 1899.)

No. 1,079.

PRINCIPAL AND SURETY—RELEASE OF SURETY BY CHANGE IN CONTRACT—BOND FROM CONTRACTOR FOR PUBLIC WORK.

The bond from a contractor for public work, provided for by 28 Stat. 278, c. 280, is intended to perform a double function: First, to secure to the government the faithful performance of the contract; and, second, to protect third persons from whom the contractor may obtain labor or materials in the prosecution of the work. In its second aspect, the bond, by virtue of the statute, contains a separate and distinct agreement between the obligors and such third persons, as to which the agency of the government ceases when the bond is given and approved, and subsequent changes in the contract or specifications agreed upon between the government and the contractor, though without the knowledge or consent of a surety, where the general nature of the work and materials remains the same, will not release the surety from liability to persons who supply labor or materials thereunder.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This suit was brought by the Anniston Pipe & Foundry Company, the plaintiff in error, in the name of the United States, against the National Surety Company, the defendant in error, on a bond executed by the defendant on July 15, 1895, as surety for T. J. Prosser, the bond having been executed pursuant to the provisions of an act of congress approved August 13, 1894 (28 Stat. 278, c. 280), which is as follows:

"An act for the protection of persons furnishing materials and labor for the construction of public works.

"Be it enacted," etc., "that hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: provided, that such action and its prosecution shall involve the United States in no expense."

T. J. Prosser, the principal in the bond, had entered into a contract with Charles B. Thompson, assistant quartermaster of the United States army, who acted for and in behalf of the United States of America, for the construction of a boiler and pump house, pumping machinery, and connections, water mains, steel trestle, and water tank, etc., for the water-supply system for the new military post near Little Rock, Ark.; and the bond contained a condition, in substance, that if said Prosser, his heirs, executors, and administrators, should in all respects duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by said contract agreed to be observed and performed by said Prosser, according to the true intent and meaning of said contract, as well during any period of extension of said contract as

during the original term, and should make full payments to all persons supplying him labor or materials in the prosecution of the work provided for in said contract, then the obligation should become void, but otherwise remain in full force and virtue. The plaintiff company sued to recover of the defendant, as surety in said bond, the sum of $842.98, with interest and costs, being the value of certain water pipe which it had supplied to Prosser, subsequent to the execution of the aforesaid bond and contract, to enable him to execute his agreement with the government, and which pipe so supplied he had actually used for that purpose, but had not paid for. For a defense to the action the defendant pleaded, and the trial court so found, that subsequent to the execution of the aforesaid bond, and the contract which it was given to secure, the government had entered into a further agreement with Prosser, modifying the terms of the original contract, or, more accurately, the specifications thereto attached, in such a manner that Prosser was required to lay only 1,866 linear feet of six-inch water pipe in place of 3,850 feet, as specified in the original contract, and that this change in the terms of the original contract, or rather in the plans for its execution, was made without the knowledge or consent of the surety company. In view of the change in the plans for the execution of the contract which lessened the amount of water pipe necessary to be supplied and used, the trial court ruled that the plaintiff could not recover. It accordingly rendered a judgment in favor of the defendant, to reverse which the record has been removed to this court by a writ of error.

Truman A. Post, for plaintiff in error.

J. E. McKeighan (Shepard Barclay, M. F. Watts, and G. A. Vandeveer, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is a familiar rule of law that the contract of a surety must be strictly construed, and that it cannot be enlarged by construction, and that when a bond, with sureties, has been given to secure the performance of a contract, and the principal in the bond and the person for whose benefit it was given make a material change in the contract without the consent of the surety, the latter is thereby discharged. For present purposes, it may be conceded that the finding of the lower court in the case at bar discloses such a modification of the original contract between Prosser and the United States as would fall within the rule last stated, and release the defendant company from its liability, if the United States was suing for its own benefit for a breach of some provision of the contract, the due performance of which the bond was intended to secure. Such, however, is not the case. The suit is not brought by the United States to recover any damage which it has sustained; neither is it brought to enforce any provision of the contract which was entered into between the United States and the principal in the bond. On the contrary, the action is one to enforce a stipulation found in the bond, and only in the bond, which was intended solely for the protection of laborers and material men who might furnish labor and materials while the contract was being executed by Prosser. The United States is merely a nominal plaintiff, and as such, under the provisions of the act of congress, it cannot be held liable even for costs. The real plaintiff is the corporation for whose use the suit was brought, and it sues to enforce an obligation which congress required to be inserted in the bond for its protec-

tion and for the protection of others who might furnish labor or materials while the work was in progress.

The real question to be considered, therefore, is whether the act of congress under which the bond in suit was taken constituted the United States the agent or representative of the persons who supplied labor and materials after the contract and bond were executed, in such a sense that its action in consenting to a modification of the contract with Prosser must be imputed to the laborers and material men, and held to deprive them, as well as the government, of all recourse against the surety.

The act of congress of August 13, 1894, does not authorize the United States to bring suits of its own motion against the obligors in such bonds as are therein provided for, to recover what is due to laborers and material men. It is not empowered to act in their behalf in that respect, but such actions can only be brought at the instance of persons who furnish labor and materials, who are authorized, without previous leave being obtained from any executive department, to sue in the name of the United States, and control the litigation precisely as they might control it if the suits were brought in their own name. It is also noticeable that in its title the act professes to be one for the benefit "of persons furnishing materials and labor," and that in the body of the act the form of the condition to be inserted in the bond for the benefit of the United States is not in terms prescribed, the only provision in that regard being that the bond shall be "the usual penal bond"; meaning, evidently, such an obligation for the government's own protection as it had long been in the habit of exacting from those with whom contracts were made for the doing of public work. On the other hand, the condition for the benefit of persons who might furnish materials or labor is carefully prescribed. Obviously, therefore, congress intended to afford full protection to all persons who supplied materials or labor in the construction of public buildings or other public works, inasmuch as such persons could claim no lien thereon, whatever the local law might be, for the labor and materials so supplied. There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government. The bond which is provided for by the act was intended to perform a double function,—in the first place, to secure to the government, as before, the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained materials or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience.

In view of these considerations, we are of opinion that the sureties in a bond, executed under the act now in question, cannot claim exemption from liability to persons who have supplied labor or material to their principal to enable him to execute his contract with the United States, simply because the government and the contractor, without the surety's knowledge, have made some changes in the contract, subsequent to the execution of the bond given to secure its performance, which do not alter the general character of the work contemplated by the contract or the general character of the materials which are necessary for its execution. When the government has executed the contract and taken and approved the bond, it ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials, and the rights of such persons under the bond are unaffected by subsequent transactions between the government and the contractor. If such were not the case, it would be possible for the contractor and some officer of the United States, by making some change in the contract or specifications, to deprive laborers and material men of all recourse against the sureties in the bond after they had supplied materials and labor of great value in reliance upon its provisions. It is not probable that such a result was contemplated by the lawmaker. On the contrary, the act bears every evidence that it was intended to provide a security for laborers and material men on which they could rely confidently for protection, unless they saw fit, by their own dealings with the contractor, to relinquish the benefit of the security. We are confirmed in these views by the following authorities: Dewey v. State, 91 Ind. 173; Conn v. State, 125 Ind. 514, 25 N. E. 443; Doll v. Crume, 41 Neb. 655, 59 N. W. 806; Kaufmann v. Cooper, 46 Neb. 644, 65 N. W. 796; Steffes v. Lemke, 40 Minn. 27, 41 N. W. 302. The first two of these cases are very much in point. Bonds were given to the state of Indiana as obligee for the doing of public work, in pursuance of a statute of that state, which bonds contained conditions requiring—First, the faithful performance and execution of the work undertaken by the contractor; and, second, the prompt payment by the contractor of all debts incurred by him in the prosecution of the work for labor and materials supplied by third parties. It was held, in substance, that for any breach of the second condition of the bond by the contractor the right of action was in the laborer or the material man, and that such right of action could not be defeated or prejudiced by any act done by the obligee in the bond after the bond had been taken and approved. It was accordingly ruled that changes made in the contract by the parties thereto, to wit, the contractor and the public authorities, after the bonds had been executed and accepted, would not deprive material men of their right to recover against the sureties in the bond. It results from what has been said that the judgment of the circuit court was erroneous upon the facts found by that court, and should be reversed. It is so ordered, and that the case be remanded for a new trial.