UNITED STATES, to Use of FIDELITY NAT. BANK OF SPOKANE, WASH., v. RUNDLE et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1900.)

No. 557.

1. PRINCIPAL AND SURETY—BOND OF CONTRACTORS FOR PUBLIC WORK—LIABILITY OF SURETIES.

The liability of sureties on the bond of a contractor for government work, conditioned, as required by act of August 13, 1894 (28 Stat. 278), to persons who supplied labor or materials in the prosecution of the work, is not affected by the amount which may have been expended by them in completing the contract of the principal after the government had taken it out of his hands.

2. SAME—ASSIGNABILITY OF CAUSE OF ACTION.

The right of laborers and material men to enforce the obligation of the sureties on the bond of a contractor for government work, conditioned, as required by 28 Stat. 278, c. 280, is assignable, and passes by an assignment of their claims.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

Happy, Hindman & Langford, for plaintiffs in error.

Henley, Kellam & Lindsley and A. G. Avery, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. An act of congress approved August 13, 1894, entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," provided that thereafter "any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract

and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: provided, that such action and its prosecution shall involve the United States in no expense"; and with the further provision that the court in which such action is brought may require further security for costs in case the judgment goes for the defendant. 28 Stat. 278. On the 1st day of July, 1897, N. B. Rundle entered into a contract with the United States for the erection of certain buildings upon the army post grounds near Spokane, Wash., and, pursuant to the above statute, executed a bond to the United States in the penal sum of $10,000, with D. W. Henley and F. E. Snodgrass as sureties, conditioned that, if the principal "shall and will in all respects duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by said contract agreed and covenanted by said N. B. Rundle to be observed and performed, according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, and shall promptly make full payments to all persons supplying him labor or material in the prosecution of the work provided for in said contract," then the obligation to be void; otherwise, to remain in full force and virtue. The present action was brought in the court below upon this bond by the Fidelity National Bank, in the name of the United States, against Rundle as principal and Henley and Snodgrass as sureties, upon claims for labor and material furnished to said Rundle, of which the bank alleged in its complaint it had become the owner by purchase and assignment. During the progress of the work by Rundle, and while the buildings were but partially completed, the government, in the exercise of a right reserved in the contract, took the work out of his hands, and upon the same day notified the sureties of its action. With the consent of the government, the sureties at once took up the work so contracted for, and upon its completion by them the government accepted it as full performance of the contract. Rundle made no defense to the action, and the plaintiff took judgment against him by default for the full amount claimed in its complaint. The sureties resisted the plaintiff's claim on three grounds: First, that the facts alleged in the complaint do not constitute a cause of action in favor of the plaintiff against them; second, that by agreement between Rundle and the bank the latter, as the holder of the claims sued upon, had so extended the time of payment thereof, without the knowledge of the sureties, as to discharge them from their obligation to pay the same; and, third, that in the completion of the contract work from the point where Rundle left it they necessarily expended, not only the full amount received from the government (being the balance of the contract price unpaid when Rundle left off and the sureties assumed the work), but beyond and in excess thereof more than the amount of the penalty of the bond. The two last-mentioned de-

fenses were pleaded in the answer of the sureties. Upon the con-clusion of the evidence the court below instructed the jury, among other things, to the effect that the bond sued upon was of a dual character, creating a liability to the government, and also to those who should furnish the principal in the bond with labor or mate-rial, but that the full extent of the liability assumed by the sureties was the sum of $10,000; that the obligation to the government was paramount to that to the creditors of Rundle, and that, therefore, if the full amount of the penalty was exhausted in satisfying the de-mand of the government, it would release and absolve the sureties from any obligation to the creditors; that when the contract was taken out of the hands of Rundle the sureties stood obligated to the United States to see the work contracted for completed, or pay $10,000, and that they had the right to complete the contract, which their principal had failed to do; and that, if the evidence satisfied the jury that in completing the contract the sureties necessarily expended all the money which they received from the government, and, in addition to that, a sum exceeding the amount named as the penalty of the bond, their liability thereon was fully exhausted, and the verdict should be for the defendants. To the giving of this instruction the plaintiff duly excepted, which exception was al-lowed by the court; and the court refused to give, at the request of the plaintiff, instructions to the effect that neither of the af-firmative defenses set up in the answer constituted any valid defense to the action, to which the plaintiff also excepted.

The effect of the instruction stated was to tell the jury that, if the proper completion of the contract by the sureties cost them $10,000, or more, over and above the contract price, then, and in that event, their liability upon the bond was exhausted, and the plain-tiff could not recover. In this there was error. The liability creat-ed by the bond was in no respect affected by what it cost to com-plete the work in accordance with the contract, whether completed by the contractor himself or his sureties. Full performance of its terms and conditions was what the contract called for, and to secure which the bond was exacted and executed. The United States, having received such full performance, received all that it was entitled to, and therefore had no cause of action upon the bond; but it received nothing more than it was entitled to, how-ever much it may have cost the contractor or his sureties to com-pletely perform the contract. The bond was, however, as was said by the circuit court of appeals for the Eighth circuit in U. S. v. National Surety Co., 34 C. C. A. 526, 92 Fed. 549, "intended to per-form a double function,—in the first place, to secure to the govern-ment, as before, the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained ma-terials or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States.

The two agreements which the bond contains—the one for the benefit of the government, and the one for the benefit of third persons—are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience." It is true, we think, as the court below told the jury, that the maximum liability created by the bond was the penal sum named in it. The bond required by the statute under which it was issued is a "penal bond," which is a bond with a penalty. "The word 'bond,'" said the court in Re Fitch, 3 Redf. Sur. 457, "has with us a definite legal signification. It is a clause, with a sum fixed as a penalty, binding the parties to pay the same, conditioned, however, that the payment of the penalty may be avoided by the performance, by some one or more of the parties, of certain acts." Up to the maximum named in the bond as its penalty, those who furnished labor or materials in the construction of the work were entitled to look for payment.

The undisputed facts of the present case are such that it is not necessary to consider the question presented in the court below, and argued here, whether, if the United States had any cause of action upon the bond in suit, its claim should be preferred to that of the laborers and material men; for, as has already been observed, the United States received full performance of the contract, and therefore has no cause of complaint.

In respect to the remaining affirmative defense the evidence is conflicting. Therefore, for the error already pointed out, the judgment must be reversed, and the cause remanded for a new trial, unless it be, as contended on behalf of the defendants in error, that the obligation sued on was limited to the laborers and material men personally, and that their rights in respect to it could not pass by assignment. This is too narrow a construction of the legislation in question. We agree with what was said by the court in the case of U. S. v. National Surety Co., supra, regarding its purpose, that congress thereby intended "to afford full protection to all persons who supplied materials or labor in the construction of public buildings or other public works, inasmuch as such persons could claim no lien thereon, whatever the local law might be for the labor and materials so supplied. There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government." See, also, U. S. v. Kimpland (C. C.) 93 Fed. 403. The general rule is that an assignment of a debt carries with it the security. The application of this general principle to such cases as the present accords with the obvious purpose of the statute, while the limited construction contended for by the defendants in error might very well deprive those for whom the security was intended from realizing on their claims by assignment.

The views above expressed render it unnecessary to consider any other question argued by counsel. The judgment is reversed, and cause remanded to the court below for a new trial.