UNITED SURETY CO. v. IOWA MFG. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1910.)

No. 3,087.

1. BANKRUPTCY (§ 72*)—CORPORATIONS SUBJECT TO ACT—NATURE OF BUSINESS —"MANUFACTURING, TRADING, OR MERCANTILE PURSUITS."

A corporation whose business as actually conducted consists of installing heat and power plants, constructing conduits, waterworks, and sewers, buying, selling, and erecting steam engines, and occasionally making reports with reference to the proposed construction of electric light and power plants is engaged principally in "manufacturing, trading, or mercantile pursuits," within Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), as amended by Act Feb. 5, 1903, c. 487, § 3, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309), and may be adjudged an involuntary bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 72.*

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

2. BANKRUPTCY (§ 58*)—"CREDITORS"—"ACT OF BANKRUPTCY"—GIVING PREFERENCE TO SURETY.

A surety on the bond of a contractor for government work, who under the federal statute is directly liable to laborers to whom the contractor is indebted for labor performed under the contract, is a creditor of the contractor to the extent of such liability, within the meaning of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), and the lending of money by the surety to the contractor to pay such claims, and the taking of security therefor, at a time when the contractor was insolvent and within four months prior to its bankruptcy, was the giving of a preference to a creditor and constituted an act of bankruptcy under section 3a (2) of the act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623; vol. 1, p. 118; vol. 8, p. 7562.]

3. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—GIVING PREFERENCE TO CREDITOR.

In such case the preference is not avoided by the fact that the laborers' claims, if unpaid, would have been entitled to priority of payment from

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

the bankrupt's estate, since, having been paid by the principal debtor, they were not in existence at the time of the bankruptcy, and no right of subrogation could arise from their payment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

4. BANKRUPTCY (§ 348*)—PRIORITIES—"WAGES DUE THE WORKMEN."

Where a surety company, acting as surety on the bond of an insolvent, lends him money which is used to extinguish debt to his laborers, the claims of the surety company are not, at the time bankruptcy proceedings are instituted against the borrower, "wages due the workmen," within the meaning of section 64b (4) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 348.*]

Appeal from the District Court of the United States for the Eastern District of Missouri.

In the matter of the E. H. Abadie Company, bankrupt. Appeal from order of adjudication. Affirmed.

Henry T. Ferriss and Joseph H. Zumbalen (Franklin Ferriss, on the brief), for appellant.

Herbert R. Marlatt (George S. Johnson, Charles A. Houts, Harry B. Hawes, and W. O. Anderson, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and AMIDON, District Judge.

ADAMS, Circuit Judge. Creditors of the E. H. Abadie Company filed a petition in bankruptcy in the court below charging that that company was a corporation engaged principally in trading, manufacturing, and mercantile pursuits, and had committed an act of bankruptcy by suffering, while insolvent, the United Surety Company, one of its creditors, to obtain an unlawful preference through legal proceedings, and had not, within five days before the sale or final disposition of the property affected by such preference, vacated or discharged the same. The debtor and surety company joined in an answer denying, first, that the former was engaged principally in trading, manufacturing, or mercantile pursuits, and, second, that it had committed the alleged act of bankruptcy. The referee to whom the issues joined were referred found against the petitioners on the first of those issues and in their favor on the second. The district judge overruled the referee on his first finding, sustained him on the second, and adjudicated the company a bankrupt. From this order of adjudication the surety company appeals.

There are only two questions for consideration: Was the debtor corporation amenable to the bankruptcy act, and did it commit the act of bankruptcy charged against it? Of these in the order stated.

The referee whose finding of fact is accepted by both sides found that the business "actually transacted by the Abadie Company consisted of installing heat and power plants, constructing conduits, waterworks, and sewers, buying, selling, and erecting steam engines, and occasionally making reports with reference to the proposed construction of electric light and power plants," and specified with much detail the method of carrying on the business. From it all we conclude that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

business of the debtor was substantially the same as that disclosed in the case In re First Nat. Bank of Belle Fourche, 81 C. C. A. 260, 152 Fed. 64, and that the present case fairly falls within the principles there announced and applied. We there held that a corporation carrying on such business was engaged in manufacturing, trading, or mercantile pursuits within the meaning of section 4b of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as amended by Act Feb. 5, 1903, c. 487, § 3, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1309]), and to that holding we are disposed to adhere. This is in harmony with the decision of the Supreme Court of the United States handed down February 21, 1910, in the case of Friday v. Hall & Kaul Co., 216 U. S. 449, 30 Sup. Ct. 261, 54 L. Ed. ——.

Did the Abadie Company commit the act of bankruptcy charged in the creditors' petition?

The referee's finding on this issue, which was also accepted by both parties, may be summarized as follows: On April 15, 1908, the Abadie Company having a contract with the United States for building a sewer system at Jefferson Barracks, Mo., executed a bond with the surety company as surety, conditioned that it would faithfully perform the contract and promptly make full payment to all persons supplying labor or material for the prosecution of the work. The Abadie Company was also then engaged in performing another contract which it had entered into with the United States for installing a heating plant at Jefferson Barracks. In June, 1908, the principal became financially embarrassed, and secured a loan from the surety company of $1,400, assigning to it the unpaid balance coming to it from the government under the sewer contract, estimated to be $2,924. Then and soon after the surety company loaned the Abadie Company in three different installments $3,464 with which the cost of labor and material employed in executing the sewer contract was paid. Later, on August 1, 1908, it needed more money to meet its pay roll then coming due, whereupon the surety company loaned it $1,605.50, $1,071.50 of which was to be used to pay laborers working on the sewer contract, whose wages in that amount were then due, and the balance, $534, to pay for labor and materials employed in executing the heating contract; and agreed to loan it when needed the further sum of $1,200, estimated to be required to finish both contracts. As security for the money so loaned and agreed to be loaned the Abadie Company, pursuant to an agreement to that effect, assigned to the surety company the balance due it on the heating contract, estimated at $1,309, and gave it its demand note for $3,187.75 with its written entry of appearance and consent to a judgment in a suit to be brought on the note. Thereupon on that day, August 1, 1908, a suit was brought in a local court on the note, the written appearance and consent to a judgment filed, and judgment duly rendered in favor of the surety company thereon in the sum of $3,187.75 and costs. Execution, which was forthwith issued, was levied upon certain property of the judgment debtor, which was in due course sold, realizing $3,121.50. Soon thereafter the surety company loaned the Abadie Company $1,-

953.75, $1,728.20 whereof was used for paying labor and materials employed on the sewer contract and $225.20 for paying labor and materials employed on the heating contract. The surety company, as surety on the bond of the Abadie Company became, by virtue of the provisions of the act requiring that bond, directly liable to laborers who performed work and materialmen who furnished material, for their value (Act Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]; Act Feb. 24, 1905, c. 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1909, p. 948]; United States, to Use of, etc., v. National Surety Company, 34 C. C. A. 526, 92 Fed. 549; United States, to Use of, etc., v. Rundle, 40 C. C. A. 450, 100 Fed. 400), and being on August 1, 1908, so liable as surety for the principal for the workmen's wages amounting to $1,071.50 then due, it was within the meaning of the bankruptcy act a creditor of its principal and had a debt provable in bankruptcy against it in that sum. Swarts v. Siegel, 54 C. C. A. 399, 117 Fed. 13; Kobusch v. Hand, 84 C. C. A. 372, 156 Fed. 660, 18 L. R. A. (N. S.) 660.

The Abadie Company was then insolvent, and could not lawfully prefer an existing creditor. Whether other advances made then or thereafter which were secured or intended to be secured by the judgment note afforded a present consideration for that note, and therefore saved it, and the property soon thereafter transferred to the surety company by virtue of it from annulment it is unnecessary to decide. The judgment note and subsequent transfer of property by execution and sale were admittedly intended as security in part for the repayment of the $1,071.50 advanced on that day to pay matured labor demands. The transfer, therefore, became, to that extent at least, a preference in favor of the surety company, and as there is no pretense that it was ever vacated or discharged, it was, unless for some consideration, which we will take up later, an act of bankruptcy within the meaning of section 3 (3) of the bankruptcy act.

But it is contended by the surety company that, as labor claims are entitled to priority of payment under the provisions of section 64b (4) of the bankruptcy act, it, having paid them, was entitled to be subrogated to the rights of the laborers, and hence that the transfer to it by the levy and sale of the property under the judgment note worked no unlawful preference. Labor claims are assignable, and the priority accorded to them by the bankruptcy act goes with them to a transferee (Shropshire, Woodliff & Co. v. Bush, 204 U. S. 186, 27 Sup. Ct. 178, 51 L. Ed. 436), but in this case there was no assignment of the claims and none was intended by the parties. The transaction consisted simply in the Abadie Company borrowing money from the surety company to pay a debt which, as between the borrower and lender, was alone owed by the former, and instead of buying the claims from the laborers, and thereby securing some equitable right as against the principal debtor, the surety company took what it conceived to be ample security for the loan, turned over the money to the borrower, and with it the latter paid and extinguished its own debt to the laborers. Their claims, therefore, were not at the time bankruptcy proceedings were instituted against the borrower "wages due the workmen" within the meaning of section 64b (4) of the bankruptcy act. Neither were they assigned claims of that kind entitling the assignee to stand in the shoes of the laborers.

To allow the surety company, in view of these facts, to be subrogated to the rights of the laborers against the estate of the bankrupt would give it a right which it never intended to secure. The fact that it took security for this item of $1,071.50, as well as the advantage it gained with respect to its other dealings with its principal, renders it, in our opinion, entirely inequitable to now, when other creditors' rights have intervened, allow it to change its hold. Subrogation is not a matter of strict right but purely equitable in its nature, dependent upon the facts and circumstances of each particular case. National Surety Co. v. State Savings Bank, 84 C. C. A. 187, 156 Fed. 21, 14 L. R. A. (N. S.) 155.

Several other questions were ably argued by counsel, but in view of the conclusion already reached with respect to the item of $1,071.50 we find it unnecessary to protract this opinion further. The judgment of adjudication was right and must be affirmed.

NOTE.—The following is the opinion of Dyer, District Judge, in the court below:

DYER, District Judge. In October, 1908, an involuntary petition in bankruptcy was filed, seeking to have the E. H. Abadie Company, a corporation, adjudged a bankrupt. On the 17th of October, 1908, the court referred the case to Walter D. Coles as special master, to try all the issues and report his findings of facts and conclusions of law to this court. This report of the special master was filed December 2, 1908, and thereafter, on December 7th, the petitioning creditors filed exceptions to the report. The exception that is before this court at the present time is that portion of the special master's report which finds that the E. H. Abadie Company is not such a corporation as may be put into involuntary bankruptcy.

The petition filed by certain creditors alleges that the E. H. Abadie Company "is engaged principally in trading, manufacturing, and mercantile pursuits." The master reports as follows: "The business actually transacted by the company consists of installing heating and power plants, constructing conduits, waterworks, and sewers, buying, selling, and erecting steam engines, and occasionally making reports with reference to the proposed construction of electric light and power plants." The master in his report further says: "The first question presented herein is whether the evidence shows that the respondent was principally engaged in trading, manufacturing, and mercantile pursuits, within the meaning of section 4b of the bankrupt act." The master concludes that the respondent was not so engaged, and therefore not subject to being placed in bankruptcy by petitioning creditors. It is this conclusion of the special master that the court is now to deal with. Extensive briefs have been filed by both attorneys for the petitioning creditors and the attorneys for the respondent. Without undertaking to discuss the various decisions cited in the briefs, it is only necessary for this court to determine whether the Court of Appeals for the Eighth Circuit has disposed of the question now before this court. If it has, it is conceded by both sides that the decision is binding upon this court.

The master in his report (and it is a very able report and entitled to great consideration) thinks that the question here presented has not been decided by the Court of Appeals for the Eighth Circuit. He says, however, in his report, in discussing the question as to whether the decision of the Circuit Court of this district in Re First National Bank of Belle Fourche, 152 Fed. 64, 81 C. C. A. 260, as follows: "It is, however, contended by the petitioning creditors that under the doctrine announced in the case of In re First National Bank of Belle Fourche, 18 Am. Bankr. Rep. 265, 152 Fed. 64, 81 C. C. A. 260, decided by the Circuit Court of Appeals for this circuit, respondent should be held to be principally engaged in 'manufacturing.' The case referred to is, of course, as to the matters there in judgment, controlling authority in this ju-

risdiction; but the special master is of opinion that it does not establish the doctrine contended for. In the First National Bank Case it was held that an averment in a petition in bankruptcy that a corporation 'is, and during all said time has been, engaged in the business of manufacturing concrete arches and bridges, manufacturing and dressing stone, and selling the same, and railroad ditch contracting,' was sufficient to sustain a default adjudication, where objection was first made by motion to vacate after judgment, and that the trial court had not abused its judicial discretion in refusing to sustain the motion to vacate, where the objecting creditor was cognizant of the prior proceedings, and had waited for more than a month before making his objection. The basic propositions upon which this case was determined were, first, that an averment that the alleged bankrupt was one of the class of corporations subject to be adjudged bankrupt was not essential to give the trial court jurisdiction to make the adjudication; and, second, that the delay in presenting the application to vacate the adjudication, in the circumstances disclosed by the record, justified the trial court in denying such application. Judge Sanborn, in delivering the opinion of the court, discusses incidentally the meaning of the term 'manufacturing,' as employed in section 4b of the bankrupt act. No doubt, if all that is said by the judge who wrote the opinion is to be regarded as having the force of law, the case referred to would tend in a measure to sustain the contention here made by the petitioning creditors. But the language employed in this opinion must be read in the light of the facts actually in judgment, and when so read the special master is of opinion that the case cannot be treated as an authority sustaining the contention made by the petitioning creditors herein, and does not constrain us to reach a conclusion at variance with the decisions previously referred to. In accordance with the foregoing views, the special master finds that the respondent is not principally engaged in trading, manufacturing, or mercantile pursuits, within the meaning of the bankrupt act."

With the reasoning and conclusions of the master in reference to this decision I cannot agree. In construing the word "manufacturing," as contained in the bankrupt act, the court says: "The word 'manufacturing' is a generic term of broad significance, advisedly used by Congress to include many species of corporations, and its comprehensive meaning ought not to be whittled away by fine distinctions. Derivatively meaning 'making with the hand,' its ordinary significance is producing a new article of use or ornament by the application of skill and labor to the raw materials of which it is composed. Pin makers, pen makers, shoe makers, furniture makers, lumber makers, steel makers, boot makers, rail makers, engine makers, cement makers, are undoubtedly engaged in manufacturing, and the cogency of the argument that a corporation which makes a pin is manufacturing, while one which makes a bridge is not, fails to appeal to our judgment with convincing force. The latter may make the cement or the steel, and, whether it makes them or not, it produces a new and useful article, a bridge, when, by the application of skill and labor to the materials of which it is composed, it constructs it. As usual, in respect to every question which involves the construction or operation of the bankruptcy law, there is a conflict of authority; but the more persuasive reasons and the weight of the decisions support the view, and our conclusion is, that a corporation principally engaged in constructing concrete arches and bridges and in dressing and selling stone is engaged in a manufacturing pursuit, and subject to adjudication in bankruptcy upon an involuntary petition."

Applying the rule to this alleged bankrupt as declared in this opinion by Judge Sanborn, it is quite clear to the court that the alleged bankrupt is such a manufacturing concern as brings it within the provisions of the bankruptcy law. The attorneys for the alleged bankrupt have been most diligent in their search of the authorities in support of their contention, and have filed in this case a very able brief. Satisfied, however, as I am that the opinion written by Judge Sanborn in the case above cited, is decisive of the one here, the exception to the master's report in this particular will be sustained.

The other questions raised by the exceptions to the report by counsel on the other side are reserved for further consideration.