## UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES.

### No. 4497.

United States Court of Appeals
Tenth Circuit.

Dec. 30, 1952.

Justin T. Reid, Santa Fe, N. M., and J. Harry Cross, Baltimore, Md. (A. K. Montgomery and Wm. R. Federici, Santa Fe, N. M., were with them on the brief) for appellant.

Louise Foster, Washington, D. C. (Charles S. Lyon, Acting Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Fred E. Youngman, Sp. Assts. to the Atty. Gen. and Maurice Sanchez, U. S. Atty., Albuquerque, N. M., were with her on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The Construction Department of the United States Army entered into a contract with C. H. Leavell and Company for the construction of the Missile Building at White Sands Proving Grounds in New Mexico. Leavell entered into a subcontract with Kendrick Electric, Inc., for performance of part of this work. The United States Fidelity and Guaranty Company executed the payment bond for Kendrick required by the Miller Act.[1] In the application for the bond Kendrick assigned to the surety company as collateral to secure its obligations under the bond all right, title and interest it had under the subcontract, including all retained percentages, deferred payments, earned money, etc. Kendrick defaulted in the discharge of its obligations under its subcontract. In addition to claims for materials, supplies and equipment due from Kendrick, it was also indebted to the United States for withholding taxes from its employees withheld by it from their wages but not paid to the Government. Demand being made upon Kendrick's surety by Leavell, it paid all unpaid claims for materials, supplies and equipment due from Kendrick. At that time there was due Kendrick from Leavell on the subcontract the sum of $4,960.24. Conflicting claims were asserted to this fund. The Government claimed prior right thereto in satisfaction of its lien for federal income taxes and federal unemployment taxes assessed against Kendrick. The surety company claimed prior right therto by virtue of the

assignment of all funds in the application by Kendrick for the bond. The trial court decided the issue in favor of the Government. This appeal challenges the correctness of that conclusion.

In its conclusions of law the trial court held that Kendrick agreed to and accepted full and exclusive liability for the payment of these withholding taxes and that it was obligated to the United States for their payment and that under the surety company's bond for the performance of Kendrick's obligations it became liable for their payment.

It is true that in Paragraph 12 of the subcontract Kendrick assumed and accepted "full and exclusive liability for the payment of any and all contributions or taxes for Unemployment Insurance and/or Old Age Retirement Benefit, Pensions, or Annuities, * * *" imposed by the Government and measured by the wages paid to its employees. But this did not create the liability on Kendrick's part for the payment of these taxes. It was merely declaratory of Kendrick's existing liability under the federal tax laws.

26 U.S.C.A. § 1401(a) and 26 U.S.C.A. § 1622(a) deal with the imposition of withholding taxes. Section 1401(a) provides that the tax imposed by § 1400 shall be collected by the employer by deducting the amount thereof from the employee's wage. Section 1622(a) provides that "Every employer making payment of wages shall deduct and withhold upon such wages a tax equal to * * *." 26 U.S.C.A. § 1623 provides that "The employer shall be liable for the payment of the tax required to be deducted and withheld under this subchapter [§ 1622], and shall not be liable to any person for the amount of any such payment." A similar provision is contained in 26 U.S.C.A. § 1401(b). By Treasury Regulation 116 § 405.301 and Regulation 128 § 408.304 the employer's liability for the tax attaches whether or not he withholds it from the wages and the amount withheld from the wages of an employee shall be allowed to him as a credit on his income tax liability[2] and the Government shall

---

1. 40 U.S.C.A. § 270a.

2. 26 U.S.C.A. § 35.

make a credit or refund to the employee "even though such tax has not been paid over to the Government by the employer."[3] It is thus clear that Kendrick's liability for the payment of these taxes arises by virtue of law and not because of any contractual acknowledgement of the existing legal liability.

The trial court's conclusion that Kendrick breached its construction contract with Leavell was not predicated on the ground that it had failed to discharge its tax liability for these withholding taxes to the Government. Rather the court seems to have concluded that the sums withheld constituted wages and failing to pay them over to the Government constituted a breach of the contract requiring it to pay all wages.[4] This is also one of the contentions made by the Government on appeal. In its brief the Government states: "The amounts covered by the liens of the United States represent amounts deducted and withheld from wages paid by Kendrick Electric, Inc., to its employees in the performance of its subcontract. They represent a part of the liability assumed by the prime contractor and its surety for the payment of labor and material and to the extent of such withholding the United States succeeded to the rights of the wage earners by operation of law." And that "Under the circumstances the United States succeeds by operation of law to the rights of the wage earners to the amounts deducted and withheld from wages as effectively as if it had taken a written assignment from the wage earners covering the withheld portion of their wages." However, from the statutes and regulations as set out it seems clear that when an employer withholds the tax from an employee's wage and pays him the balance the employee has been paid in full. He has received his full wage. Part of it has gone

to pay his withholding tax and the balance he has. The employer has discharged his contractual obligation to pay the full wage. Thereafter there remains only his liability for the tax which he has collected. That is a tax liability for which he alone is liable to the Government as for any other taxes which he may owe.[5]

The Government in its brief cites a line of cases in support of its contention that failure to pay taxes such as these imposes liability under similar payment bonds. A detailed analysis of each case would unduly extend this opinion. Typical of this line of cases are Standard Accident Insurance Co. v. United States for Use and Benefit of Powell, 302 U.S. 442, 58 S.Ct. 314, 82 L.Ed. 350, and Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. In the Standard Accident Insurance Company case the Supreme Court held that a common carrier's claim for freight charges for the transportation of materials used in the construction of a federal building was one for labor and materials within the meaning of the act requiring the bond, and in the Illinois Surety Company case the Supreme Court held that the rental for cars and the expense of loading the plant there involved and freight thereon used in fulfillment of the contract constituted labor and materials within the act requiring a bond from the contractor. The facts in the other cases relied upon also distinguish them and make them inapplicable to the question before us. These cases as well as the others all hold that the Miller Act and the acts preceding it should be liberally construed in determining what constituted furnishing labor, material or supplies, but no case to which our attention has been called goes so far as to hold that an employer's tax liability is within the provision of the bond merely because wages were used in paying

3. Treasury Regulation 116 § 405–401.

4. In its conclusion of Law No. 2 the court stated that ."Under the terms of the subcontract, Kendrick Electric, Inc., was and is obligated to pay all wages due labor used in performance of such sub-contract and that the withholding taxes for which the United States makes claim are part of the wages due said labor, having been

previously deducted and withheld by the employer, and that under the surety bond, on default by said employer Kendrick Electric Inc., the surety, plaintiff herein, became liable for the payment of such withholding taxes."

5. United States v. New York, 315 U.S. 510, 316 U.S. 643, 62 S.Ct. 712, 86 L.Ed. 998.

the employee's tax liability and creating that of the employer.

█ The Government further asserts that "The liability of the subcontractor to deduct and withhold a part of the wages of its employees, and to pay over to the Collector the portion of wages so withheld, was as much a part of the liability of the prime contractor under its Miller Act bond to pay for labor and material as was its liability to pay the net 'take-home' wages of such employees." The reasons that impel us to conclude that Kendrick's liability for these taxes was not a liability for the payment of wages and that failure to pay them to the Government was not a breach of its contractual obligation to pay all wages and material claims requires the same conclusions with respect to this contention. The debate on the floor of Congress indicates that the performance bond of the Miller Act was to make the contractor liable for default by reason of his inability to complete the contract or by reason of failing to meet the requirements and specifications as to material, and that the payment bond was to insure the contractor's liability for claims of subcontractors, material-men and laborers.[6] There is nothing in the legislative history of the Miller Act or the acts which it succeeded to indicate that the performance bond was to cover any obligations other than the requirement that the contractor complete his contract according to its specifications.

█ Finally it is contended that the Government's lien for these taxes is superior to the surety's claim to these funds. This contention has been decided against the Government in a series of cases. As pointed out in the application for the payment bond, Kendrick assigned to the surety company all its right, title and interest in and to any funds it was entitled to receive from the principal contractor, Leavell, to indemnify it against liability to which it might become subjected by virtue

of Kendrick's breach of its construction subcontract. At the time the surety company became liable and discharged its liability by paying all material, supply and labor claims, the fund in question was due Kendrick from Leavell. When a surety is called upon and makes good under its contract of suretyship upon default of its principal, it acquires an equitable lien against any sum remaining in the hands of the one for whose protection the bond was written due to its principal upon discharge of his obligation under its bond. This equitable lien relates back to the date of the contract and is superior to a Government lien for unpaid taxes subsequent to the date of the contract of suretyship although prior to the date of payment by the surety.[7]

The case of the United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S. Ct. 111, 95 L.Ed. 53, upon which the Government relies is distinguishable upon the facts. There it was held that the equitable doctrine of relation back will not operate to defeat the specific and perfected tax lien of the United States. In that case the Federal Government had perfected its tax lien against real estate belonging to a defendant debtor in the state court in an action in which the plaintiff had caused an attachment lien to be filed against the debtor's property. Under California law the attachment gave him only an inchoate lien which became perfected upon the entry of judgment. The effect of the decision by the Supreme Court is that the judgment subsequent to the perfection of the Government's tax lien did not relate back to the date of the filing of the attachment so as to give the judgment creditor a lien superior to the tax lien of the Government. It is to be noted that both liens attached to property belonging to the defendant debtor, property that was his at all times. Such is not the case here. On the date of the execution of the subcontract the prime contractor had a

6. Congressional Record. Volume 79, Page 13, 382.

7. Glenn v. American Surety Co., 6 Cir., 160 F.2d 977; New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34; Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L. Ed. 412.

specific right of ownership in any funds accruing to the subcontractor from the performance of his subcontract. The right to withhold these funds upon default was superior to any other claim against the fund as the property of the subcontractor. When the subcontractor defaulted and its surety, the appellant in this case performed it stepped into the shoes of the prime contractor and was subrogated to all rights that it held against the subcontractor. Those rights related back to the date of the subcontract and were effective from the date thereof. This was in point of time prior to the perfection of the Government's tax liens. Actually the defaulting subcontractor had no right to this fund. It owed the principal contractor more than was due to it from such principal contractor. As between the Government and appellant surety who stepped into the shoes of the principal contractor, the Government could acquire no greater right to this fund than the subcontractor had.

The judgment of the trial court is reversed and the cause is remanded to proceed in conformity with the views expressed herein.

PICKETT, Circuit Judge (dissenting).

It seems to me that my colleagues take too narrow a view of the coverage intended by the terms of the performance and payment bond in this case. Under the statute and the provisions of the bond, the surety has the primary obligation to pay the wages of the laborers upon default of the contractor. This obligation extends to the full amount of the wages earned and not just a percentage or portion of them. I can see no reason why this obligation should be diminished because the law requires that a portion of the wages be diverted to the United States for the payment of income taxes and other benefits for the wage earners. By holding the surety responsible for the amounts withheld from the wages under the law, no more is required than what the surety agreed to do and for which it was paid a premium. To so hold does not injure or mislead the surety or extend its liability in any manner.

Where a wage earner has assigned his wages or a portion of them to a third party, the surety is responsible to the assignee if the employer defaults. United States Fidelity & Guaranty Co. v. United States for the Benefit of Bartlett, 231 U.S. 237, 34 S.Ct. 88, 58 L.Ed. 200; Title Guaranty & Trust Co. v. Crane Co., 219 U.S. 24, 31 S. Ct. 140, 55 L.Ed. 72; Third National Bank of Miami v. Detroit Fidelity & Surety Co., 5 Cir., 65 F.2d 548, certiorari denied, 290 U.S. 667, 54 S.Ct. 88, 78 L.Ed. 577; United States, to Use of Fidelity National Bank v. Rundle, 9 Cir., 100 F. 400; National Market Co. v. Maryland Casualty Co., 100 Wash. 370, 170 P. 1009, 174 P. 479, 1 A.L.R. 450; Northwestern Nat. Bank v. Guardian Casualty & Guaranty Co., 93 Wash. 635, 161 P. 473; 43 Am.Jur., Public Works and Contracts, Sec. 152; Anno. 77 A.L.R. 149. I see no essential difference in this case and the assignment cases. The liability remains exactly the same as though the full amount of the wage earned was due to the wage earner. Under such conditions, the surety should bear any loss in the total amount of the wages earned even though a portion of the wages bears the label of a tax. This type of case is easily distinguishable from those where it was sought to hold the surety liable for ordinary taxes of the employer.

In determining whether the amounts withheld are part of wages earned or strictly a tax, the provisions of the Miller Act and the bond should be given a liberal construction to require full coverage of the bond. Fleisher Engineering & Construction Co. v. United States, for Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; Massachusetts Bonding & Ins. Co. v. United States, for Use of Clarksdale Machinery Co., 5 Cir., 88 F.2d 388. I would affirm the judgment.