UNITED STATES of America,
Appellant,

v.

MARYLAND CASUALTY COMPANY,
Appellee.

No. 19785.

United States Court of Appeals
Fifth Circuit.

Oct. 15, 1963.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Frederick E. Youngman, Attys., Dept. of Justice, Washington, D. C., E. Barefoot Sanders, Jr., U. S. Atty., Joseph McElroy, Jr., Asst. U. S. Atty., Dallas, Tex., for appellant.

W. S. Downard, Wm. M. Taylor, Jr., Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., for appellee.

Before TUTTLE, Chief Judge, and WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

By its complaint in the U. S. District Court the appellant United States, sought to recover certain federal taxes from Maryland Casualty Company, as surety, on certain subcontract performance bonds. The taxes involved are income withholding taxes,[1] taxes due under Federal Insurance Contributions Act (FICA), commonly referred to as Social Security,[2] and taxes due pursuant to the Federal Unemployment Tax Act (FUTA).[3] The facts were stipulated by

1. Withholding taxes were imposed by § 3402(a) of the Internal Revenue Code of 1954, which requires employers to deduct and withhold from wages paid certain income taxes, and makes the employer liable for the payment thereof.

2. See §§ 3101 et seq. of the Internal Revenue Code of 1954. § 3101 provides for the employees contribution, and § 3102 requires the employer to deduct such contribution from wages and pay such amounts over to the Government. § 3111 imposes an equal tax liability upon the taxpayer.

3. See § 3301 et seq. Internal Revenue Code 1954.

the parties.[4] As indicated, some of the taxes were deducted and withheld by the subcontractor from the wages of its employees and some of the amounts claimed to be due and unpaid were imposed directly on the subcontractor as an employer. The trial court entered findings of fact and conclusions of law, and thereupon rendered judgment dismissing the complaint with prejudice. The United States has appealed.

Involved are construction contracts entered into between Masonry Construction Company, as subcontractor, and R. F. Ball Construction Company, Inc., as contractor. Maryland Casualty Company, as surety, issued construction bonds guaranteeing payment and performance by the subcontractor under each of the contracts. The construction subcontracts and related surety bonds are substantially identical in all respects material to this appeal. In the construction contracts between Masonry and Ball, Masonry agreed:

"* * * * to furnish and pay for all labor, material, tools, equipment, compensation insurance and public liability and property damage insurance (carried in responsible companies and in limits satisfactory to R. F. Ball Construction Company, Inc.), also keep records and make payments on all Federal and/or State Payroll Taxes and/or deductions, together with all other incidentals necessary to complete in a good and workmanlike manner. * * *"

The bonds which appellee signed as surety provide:

"This bond shall inure to and be for the direct benefit of all laborers, materialmen, and other creditors of the Principal [Masonry] whose indebtedness arises out of said contract."

A pre-trial order agreed to by both parties states:

"Plaintiff claims: This is a suit instituted by the plaintiff U.S. of A.

as a third party beneficiary to contracts * * *;"

"Contested issues of fact: Whether it was intended that the U.S. be a third party beneficiary of the surety bonds."

"Contested issues of law: Whether the plaintiff U.S.A. is a third party beneficiary * * *."

"Witnesses: None; the above-mentioned Exhibits and attached stipulations of fact constitute the only evidence to be offered by either party."

The District Court made the following pertinent findings of fact:

"The plaintiff places reliance entirely upon these provisions of the contract as indicating an intention that the contract inure to the benefit of the United States as third-party beneficiary thereof, and the plaintiff has neither alleged any special circumstances nor presented any evidence tending to indicate that these provisions of the subcontracts were intended for the benefit of the United States. The Court is of the opinion and so finds that each of these three subcontracts (Exhibits C, D and E) including the above-quoted provisions thereof, were intended for the benefit of the parties thereto and not for the benefit of the United States."

*     *     *     *     *     *

"The plaintiff relies upon the last sentence above quoted as constituting it a third party beneficiary of the bond. In other words, plaintiff contends that the United States is among the class of beneficiaries described as ' * * * other creditors of the Principal, whose indebtedness arises out of said contract.' The Court is of the opinion and so finds that these bonds were not executed for the benefit of the United States, nor did the parties thereto intend that such bonds should inure to the benefit of the United States with re-

---

4. The original complaint contained 5 counts and there were adverse rulings as to each claim set forth in each count. The Government did not appeal from the decision as to Counts 1 and 5. Only Counts 2, 3 and 4 are involved on this appeal.

spect to the subcontractor's tax liabilities."

The following is from the conclusions of law entered by the trial court:

"The third-party beneficiaries entitled to sue on the bonds (Exhibits C, D and E) involved in Counts II, III, and IV are expressly restricted by the specific terms of such bonds to ' * * * laborers, materialmen and other creditors of the Principal, whose indebtedness arises out of said contract.' The Court is of the opinion and so holds that the United States is neither a laborer nor a materialman nor within the class of 'other creditors of the Principal, whose indebtedness arises out of said contract.' "

The Government argues that it is one of the "creditors of the Principal, whose indebtedness arises out of said contract" because the taxes claimed arose out of the work performed under the contract. This argument was met by the Supreme Court in Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953), wherein the court stated:

"The requirement that Graham withhold taxes from the 'payment of wages' to its employees and pay the same over to the United States did not arise from the contract. The requirement is squarely imposed by §§ 1401 and 1622 of the Internal Revenue Code. * * * Graham's embezzlement lay neither in execution nor in breach of the contract. It arose from the conversion of the withheld taxes which Graham held as trustee for the United States pursuant to § 3661 of the Code. Assignor Graham's indebtedness to the United States arose, we think, 'independently' of the contract."

Although the Central Bank case involved an attempt on the part of the Government to set off taxes owed by the assignor against the assignee's claim and a construction of the Assignment of Claims Act of 1940, we feel that the Supreme Court's holding that federal taxes do not arise out of contractual obligations, but rather by federal law, is so clear and unequivocal as to be binding in the present case. In United States Fidelity & Guaranty Company v. United States, 10 Cir., 1952, 201 F.2d 118, the 10th Circuit, faced with a case very similar to the present case, reversed the lower court and refused to allow recovery of taxes stating:

"It is thus clear that Kendrick's liability for the payment of these taxes arises by virtue of law and not because of any contractual acknowledgement of the existing legal liability."

In discussing the terms of the construction contract and the bond involved in the United States Fidelity & Guaranty case, which contained provisions relating to the payment of taxes similar to those involved in the present case, the 10th Circuit concluded:

"But this did not create the liability on Kendrick's part for the payment of these taxes. It was merely declaratory of Kendrick's existing liability under the federal tax laws."

The Government relies heavily on the 4th Circuit case of United States v. Phoenix Indemnity Co., 4 Cir., 1956, 231 F.2d 573. That case did allow the Government to recover from the surety taxes owed by the subcontractor. However, the 4th Circuit there stated, " * * * but the bond was made for the Government's protection and it is entitled to sue thereon as a third party beneficiary." The opinion fails to disclose the factors upon which such conclusion was based. An earlier 4th Circuit case, United States v. Crosland Const. Co., 217 F.2d 275 (1954), denied recovery of taxes in a comparable situation and quoted with approval the holding in Central Bank v. United States, supra, to the effect that tax liability arose "independently of the contract". Since the 4th Circuit held in Phoenix that it was not overruling Crosland, we must assume that there were facts or other pertinent factors present in Phoenix which authorized the con-

clusion that the bond there involved was made for the Government's protection. The fact that the prime-contractor in Phoenix was the Housing Authority of Fayetteville, North Carolina, could well have been one of such factors.

Finally, the Government argues that the District Court erred in finding that the provisions of the contract in question were not made with the intent to benefit the Government, and that the Government therefore was not entitled to sue as a third party beneficiary. While it may not be necessary to decide this question in view of our conclusion that the taxes sued on did not arise out of the contract, we can see nothing on the face of the bonds to indicate an intention to make the Government a third party beneficiary. The cardinal rule as to contracts for the benefit of third persons is stated as follows:

> "It is commonly said that "for one to be able to avail himself of a promise in an agreement 'to which he is not a party, he must, at least, show that it was intended for his direct benefit,' in either all or part of its contemplated performance." Since the promisor has undertaken to render performance to the beneficiary, his intent to do so is usually clearly manifested. "However, the authorities are in accord that one suing as a third party beneficiary has the burden of showing that the provision was for his direct benefit" and unless he can sustain this burden, he will not be permitted to sue on the agreement." Williston on Contracts, (3rd Ed., Jaeger, 1959), Vol. 2, § 356A, pp. 835–36.

There was no proof showing that the subcontracts or related surety bonds were intended to benefit the Government. No extrinsic facts or surrounding circumstances were shown to indicate such intent. There was no allegation or proof that the subcontractor defaulted or failed to well, truly and faithfully perform the construction subcontracts, other than the allegation by the Government that the failure of the subcontractor to pay the taxes in question constituted a default. We must assume from the record that the subcontractor completed the work and fulfilled all obligations of the contract, unless failure to pay taxes constitutes a breach. There are no pleadings or proof that Masonry lost money on any of the subcontracts, that it used any tax funds withheld in the construction or that it expended or lost such funds in the performance of the contract. Under the record before us we can look only to the terms of the documents under consideration and determine as a matter of law whether they can be construed to be third party beneficiary contracts for the benefit of the United States.

The express terms of the bond leave no doubt that the only third party beneficiaries entitled to sue thereon are " * * * laborers, materialmen, and other creditors * * * whose indebtedness arises out of said contract." The Government concedes that the prime contractor is not liable. It has not carried the burden of showing that it is a third party beneficiary. The Government is not a creditor in the usual sense of the term and as that term is used in the indemnity contract, but rather it is a tax gatherer not included within the protection of the surety bond.

The judgment is affirmed.

TUTTLE, Chief Judge (specially concurring).

Reluctantly, I concur in the result. If it were not for the language of the Supreme Court in Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312, I could not agree that the indebtedness here was not one which "arises out of said contract." Of course, it is true that Masonry's obligation to pay the withheld sums over to the Government was imposed by Federal statute, but it is equally true that if there had been no contract between Ball and Masonry there would have been no employment by Masonry; there would have been no wages due; there would have been no withholding; there would have been no indebtedness from Masonry to

the Government. Thus, it is clear that the indebtedness arose at least partially out of the contract between Masonry and Ball.

Although a respectable effort at distinguishing this case from the Central Bank case could be made on the basis that the Supreme Court gave a construction to the language "independently of the contract," because it was construing a statute in line with its understanding of the Congressional intent to make easier outside financing of Government contracts in that case, I do not think that we could hold in the case before us that the indebtedness here "arose from the contract," in light of the Supreme Court's holding there that a similar indebtedness arose "independently of the contract." Being thus bound by the Central Bank case, I must concur in the result.