**AMERICAN FIDELITY CO. v. DELANEY,**
Collector of Internal Revenue, et al.

No. 1164.

United States District Court
D. Vermont.

Sept. 8, 1953.

A. Luke Crispe, Brattleboro, Vt., Allen A. Backer, Manchester, N. H., for American Fidelity Co.

Joseph A. McNamara, U. S. Atty., Burlington, Vt., Frederick G. Rita, Sp. Asst. to the Atty. Gen., for the United States.

Osmer C. Fitts, Paul N. Olson, Brattleboro, Vt., for Atlantic Corp.

GIBSON, District Judge.

The American Fidelity Company, a Vermont corporation, filed a complaint against Denis W. Delaney, Collector of Internal Revenue for the District of Massachusetts, John E. Burns, Deputy Collector in Charge, District of Massachusetts, George E. Duteau of Springfield, Massachusetts, and the Atlantic Corporation, a corporation organized and existing under the laws of the Commonwealth of Massachusetts.

Service was made on the United States by delivering the summons to the United States Attorney for the District of Vermont, and by sending copies by registered mail to the Attorney General of the United States and to the Commissioner of Internal Revenue, Washington, D. C. Service on the defendant George E. Duteau was made upon the authorized agent of said Duteau, and service on the Atlantic Corporation was made upon the Secretary of State of the State of Vermont, who was the duly authorized agent of the said Atlantic Corporation.

This complaint was answered by the Atlantic Corporation. Defendants Delaney and Burns each moved to dismiss for lack of jurisdiction. This motion was denied. The plaintiff, shortly after the filing of its complaint, moved for leave to make the United States of America and the Department of Internal Revenue defendants in the action. This motion was granted. Shortly thereafter, the United States of America petitioned for leave to intervene, and upon leave being granted, filed its complaint in intervention. Both the plaintiff and Atlantic Corporation made answer to the intervener's complaint. With issue thus joined, the intervener moved for the dismissal of the original complaint as against Delaney, Burns and the Department of Internal Revenue. This motion was granted. The plaintiff then moved to join the State of Vermont and David V. Anderson, its Auditor of Accounts, as parties defendant. This motion was granted. Service of the motion and of the order granting the motion were accepted by the Attorney General of the State of Vermont, who also filed an answer to the complaint of the plaintiff. The Attorney General of the State of Vermont did not, however, appear at the trial and present any evidence.

Thus at the time of the hearing, the parties to this action were the American Fidelity Company as plaintiff, George E. Duteau and the Atlantic Corporation as defendants, the United States of America as an intervener, and the State of Vermont and David V. Anderson, its Auditor of Accounts, as defendants, these last two being in the nature of stakeholders. The defendant Duteau having filed no answer, the complaint as to him was taken as confessed. In effect, this action is brought by the plaintiff for judgment declaratory of the rights of the parties with respect to a certain fund held by the State of Vermont respecting the final payment upon a contract for road work between the defendant Duteau and the State of Vermont.

The basic issues here to be decided are:

1. Was the American Fidelity Company liable to the United States under its surety bonds for withholding and FICA taxes withheld by the defendant Duteau from the wages of his employees but not paid to the United States?

2. Were the liens of the United States for the income, withholding and FICA taxes assessed against defendant Duteau entitled to priority over the American Fidel-

ity Company and defendant Atlantic Corporation?

3. Was American Fidelity Company liable for taxes withheld from the employees of the defendant Duteau as an employer under Section 1621(d) (1) of the Internal Revenue Code?

4. If plaintiff is entitled to be reimbursed, how much is it entitled to and how much is the defendant Atlantic Corporation entitled to, if any?

## Findings of Fact

A hearing was held in this matter at Brattleboro, Vermont, on the first day of June, 1953, and upon consideration of the pleadings, the stipulation as to agreed facts and the evidence, I find the following facts:

1. The plaintiff was and is a corporation existing under the laws of the State of Vermont.

2. The former defendant, Denis W. Delaney, at the time of the filing of the complaint, was the United States Collector of Internal Revenue for the District of Massachusetts, and the former defendant John E. Burns was the Deputy Collector in charge of the United States Internal Revenue District of Massachusetts. Subsequent to the bringing of the complaint, the defendant Delaney ceased being the United States Collector of Internal Revenue for the District of Massachusetts, and since the United States has become an intervening party, the complaint as to Messrs. Delaney and Burns has been dismissed.

3. The defendant George E. Duteau is a resident of Springfield, Massachusetts, and was and is engaged in the general contracting business.

4. The defendant Atlantic Corporation was and is a corporation organized and existing under the laws of the Commonwealth of Massachusetts.

5. On June 10, 1949, the defendant George E. Duteau contracted with the Vermont State Highway department and the Vermont Highway Board, under the terms of which contract he was to construct a highway from Jamaica to Winhall, Vermont, for the sum of $310,625.78.

6. The laws of the State of Vermont, Vermont Statutes, Revision of 1947, § 4909, sub-sections IV and V, and the regulations of the State Highway Department required said Duteau, as a contracting party, to furnish contract bonds to the State of Vermont and the Commissioner of Highways for the State of Vermont. Such bonds were filed, each in the amount of $155,312.89.

The condition of the first bond, commonly known as a Performance Bond, read as follows:

"Now, therefore the condition of the above obligation is such that, if the above bounden principal and his subcontractors and his or their agents and servants shall well and truly keep, do and perform, each and every, all and singular the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified and shall pay over, make good and reimburse the State of Vermont all loss or losses and damage or damages which the above named Obligee, the State of Vermont, may sustain by reason of failure or default on the part of the Principal or his subcontractors, or his or their agents and servants, to fully carry out the terms of said contract, then this obligation shall be void; otherwise, to be and remain in full force and effect."

The condition of the second bond, commonly known as a Wages and Material Bond, read as follows:

"Now, therefore, the condition of the above obligation is such that, if the above bounden Principal shall pay, settle, liquidate and discharge the claims of all creditors for material, merchandise, transportation, labor, rent, hire of vehicles, power shovels, rollers, concrete mixers, tools, and other appliances used or employed in carrying out the terms of said contract between said Principal and the State of Vermont, and shall pay all taxes, both State and municipal, and contributions to the Vermont Unemployment Compensation Commission accruing during the term of performance of said contract, this

agreement to make such payment being in compliance with the requirements of Section 4909 of the Vermont Statutes to furnish security thereunder, and being in fact such security, then this obligation shall be void; otherwise, to be and remain in full force and effect."

Accordingly, said defendant Duteau, on the 7th of June, 1949, signed contract bonds with the plaintiff, as hereinbefore described, and filed them with proper officials of the State of Vermont.

7. In arranging for these contract bonds, defendant Duteau, in his application for the bonds and as a consideration for the plaintiff becoming his bondsman, agreed, amongst other things, as follows:

"That the said company, as surety on said bond, as of this date shall be subrogated to all rights, privileges and properties of the indemnitor in said contract, and said indemnitor do hereby assign, transfer, and convey to said company all the deferred payments and retained percentages arising out of this contract, and any and all monies and properties that may be due and payable to said indemnitor, and the balance of the contract price remaining unpaid at the time of the happening of any of the occurrences mentioned in the first paragraph of the next preceding section or that may thereafter become due and payable to said indemnitor on account of this contract or on account of extra work or materials supplied in connection therewith hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said company, and to be by it credited upon any loss, damage, charge, and expense (of whatever kind or nature, including premium charges) sustained or incurred by it under any bond of suretyship it has executed for the undersigned indemnitor."

8. Notice of this assignment hereinbefore described was given by the plaintiff to defendant State of Vermont and its Highway Department on the 28th of June, 1949.

9. Sometime in June, 1949, the defendant George E. Duteau commenced construction of the highway project running from Jamaica to Winhall. In early 1950 the plaintiff was notified by the Commissioner of Highways of the State of Vermont that defendant George Duteau was having financial difficulty; was having trouble with his truckers and certain materialmen; and had some threatened labor disputes and that this was impeding the proper construction of the highway which Duteau had contracted to build.

10. Thereafter, sometime towards the last of June, 1950, the plaintiff, through its agents, having investigated this complaint, agreed with the Highway Department and defendant Duteau that the plaintiff woud pay certain truckers who were independent contractors, and some other bills for materials, but it was to have nothing to do with the payrolls and it would not pay any of the employees of defendant Duteau who were working on the road. It did not maintain any control of any kind over the employees, nor did it control who would or would not be employees. It did not advance payroll money. In return for this agreement of the plaintiff to pay certain truckers for amounts due them by defendant Duteau and take care of future payments to certain truckers for work to be performed in the construction of this highway and to pay certain other miscellaneous bills, the Commissioner of Highways agreed to give all checks and state vouchers due said defendant Duteau to the plaintiff, that it might be reimbursed for moneys advanced by it, all as provided for in the assignment above recited, and this was subsequently done. However, the plaintiff advanced $18,523.94 more than it was reimbursed.

11. After this agreement was made in the latter part of June, 1950, work on the highway continued. However, the Commissioner of Highways, after investigation, objected to the manner of construction and so notified defendant Duteau. As a result of these objections, the Highway Commissioner notified defendant Duteau, in substance, that it was very doubtful if the road construction would be accepted by the State of Vermont unless the then man in charge

of the construction, namely, George Duteau, Sr., father of defendant Duteau, was removed from his position as Construction Superintendent and a competent engineer put in. The Commissioner of Highways likewise so notified the plaintiff. As a result of this, the plaintiff arranged to secure the services of one Kenneth Jones to be the Supervising Engineer on the job for the purpose of getting the job completed and accepted. Although engineer Jones was actually picked by the plaintiff as a competent Supervising Engineer and although he was paid by the plaintiff, he actually took over the work as Supervising Engineer of the project at the request of and with the full consent of the defendant Duteau. Defendant Duteau removed his own father, Mr. Duteau, Sr., from the post of Supervising Engineer and installed Mr. Jones in it. Mr. Jones, the engineer, was actually paid the sum of $1,200 by the plaintiff for his work as Supervising Engineer from the time he took over, early in November, 1950, until the project was completed and the highway accepted. The plaintiff has not been reimbursed for this amount by the defendant Duteau, although it seeks such reimbursement. However, from the first of November, 1950, when said engineer Jones was first employed as Superintendent, until the acceptance of the project by the State of Vermont, all payrolls, except the $1,200 item hereinbefore listed, were paid by defendant Duteau and said defendant Duteau had the same control and supervision over this project as he exercised when his father, George Duteau, Sr., was Superintendent. The job was finally completed and the work accepted on about December 12, 1950. After its completion and acceptance, the Commissioner of Highways caused the job to be sectioned, as required by the rules and regulations of the Highway Department, and thereafter issued to defendant Duteau and to the plaintiff its final statement of work done and materials used under the construction contract hereinbefore referred to. This final statement showed a balance due from the State of Vermont, through its Department of Highways, in the amount of $25,229.09.

12. After the receipt of the final statement, and before any tax lien was filed, the plaintiff made requests upon the Department of Highways for the payment to it of the $18,523.94, which it claimed was the amount necessary to reimburse the plaintiff for moneys which it had expended, itemized as follows:

| | |
|---|---:|
| Paid by plaintiff to material men and truckers | $15,023.30 |
| Paid by plaintiff to Kenneth Jones for his services as Supervising Engineer | 1,200.00 |
| Paid by it to its attorney, A. Luke Crispe, for services rendered by him in negotiating the adjustment of the truckers' claims against defendant Duteau, and for various negotiations with the Vermont State Highway Department which were made necessary because of the Highway Department's dissatisfaction with the progress and type of work on this highway | 1,930.38 |
| For services and expenses of said Attorney Crispe in defending defendant Duteau at the request of the plaintiff in the lawsuit brought by one Janet Hoadley Jacques for gravel | 370.26 |
| | $18,523.94 |

13. On May 11, 1951, the State Highway Board, not disputing the fact that the plaintiff had advanced the sum demanded by it, refused to turn over this sum upon the ground that there existed a controversy between the Vermont Highway Department and defendant Duteau over the amount due from the State of Vermont to said defendant Duteau under the construction contract.

14. On the 14th of May, 1951, the intervener United States, through John E. Burns, then Deputy Collector in charge of the United States Internal Revenue for the

District of Massachusetts, caused notice of a tax lien under the Internal Revenue Laws to be filed, in which it now claims a balance due the United States from said defendant Duteau in the amount of $26,404.17. These taxes are broken down as follows:

| Nature of Tax | Year or Taxable Period Ended | Date Assessment List Received | Amt. of Assessment |
|---|---|---|---|
| Income–Jul 21—514932 1949 Addl. | 1946 Addl. | July, 1949 | $ 1,387.63 |
| Income–May 1948—320323 | 1947 | May, 1948 | 2,065.00 |
| Income–Jul 21—514933 1949 Addl. | 1947 Addl. | July, 1949 | 826.92 |
| FICA–WITH–May 1950—158739 | 3/31/50 | May, 1950 | 5,827.79 |
| FICA–WITH–Sept 1950—9249 | 6/30/50 | Sept. 1950 | 8,020.27 |
| FICA–WITH–Dec 1950—8633 | 9/30/50 | Dec., 1950 | 8,276.56 |
| | | | $26,404.17 |

15. After the filing of this tax notice, the plaintiff was notified by the Highway Department that no payments would be made to the plaintiff or any other person until a final disposition and adjudication had been made of the priority and validity of this tax lien.

16. The law of Vermont provides, as I have stated, that a prime contractor in a case such as this must file a surety bond for the benefit of labor and materialmen, as was done here. However, in order to obtain the benefit of such security, a claimant must file with the Commissioner of Highways a sworn statement of his claim after the claimant ceases to perform labor or furnish labor, materials, appliances and equipment as aforesaid, or within ninety days from the time such taxes or contributions to the Vermont Unemployment Compensation Commission are due and payable. At no time did the defendant United States of America or any of its representatives ever file any such sworn statement as to taxes alleged due to the United States from defendant Duteau arising out of this highway contract.

17. Of the taxes as assessed against defendant Duteau, the following are attributable to the highway contracts hereinbefore referred to:

**Withheld Taxes**

| | | |
|---|---|---|
| 5/14/50 – 7/ 2/50 | $1,743.47 |
| 7/ 9/50 – 9/24/50 | 2,488.76 |
| 9/30/50 – 12/3/50 | 807.50 |
| | $5,039.73 |

**F.I.C.A. Taxes**

| | Employer | Employee |
|---|---|---|
| 5/14/50 – 7/ 2/50 | $ 294.65 | $ 294.65 |
| 7/ 9/50 – 9/24/50 | 418.73 | 418.73 |
| 9/30/50 – 12/3/50 | 100.05 | 100.05 |
| | $ 813.43 | $ 813.43 |

| | |
|---|---|
| Withheld Taxes | $5,039.73 |
| F.I.C.A. Taxes | 1,626.86 |
| TOTAL | $6,666.59 |

18. On or about July 14, 1950, the defendant Duteau executed and delivered to the defendant Atlantic Corporation an assignment of all moneys due and to become due under the contract for the construction of a highway between Jamaica and Winhall, less the amount of moneys advanced or paid or agreed upon for payment by the plaintiff under its Compliance Bond. This assignment reads as follows:

"For value received, I, George E. Duteau, of 1125 Page Boulevard, Springfield, Mass., hereby assign, transfer and set over unto Atlantic Corporation, 338 Park Square Building, Boston 16, Massachusetts, all monies now due or to become due to

me, (less the amount of money advanced or paid or agreed upon for payment by the American Fidelity Co. to pay bills on the contracts bonded by them) from, or payable to me by, State of Vermont, under its contract dated June 7, 1949 in the amount of $310,-625.75, for construction of highway in the towns of Jamaica, Winhall, Vermont, as general collateral security for money advanced to me today by said Atlantic Corporation, together with interest and finance charges thereon, and also for all debts and liabilities whatsoever, past, present and future, of mine to said Atlantic Corporation, direct, indirect, contingent, joint or several; with full power and authority to sue for, collect, receive, adjust, and compromise any and all of the same.

"If said amount or any parts thereof shall be paid directly to me, then I shall hold all such payments and receipts in trust for said Atlantic Corporation and turn the same over to it promptly and in the same checks, drafts, orders or cash in which the same are received by me.

"Signed and Sealed, in triplicate, this 14th day of July, 1950.
                    "s/ George E. Duteau
"Witness:
"s/ G. Rosenbaum
"July 14, 1950.
"Atlantic Corporation
"Boston, Massachusetts

"We herewith accept and assent to the above referred to assignment and agree to turn over to you all monies received by us on the above contract less the amount of money advanced or paid or agreed upon for payment by us for bills on the contracts bonded by us; but any surplus of funds on the Jamaica-Winhall, Vermont contract over the monies advanced or paid or agreed upon for payment by us, will be turned over to you to the extent of fully reimbursing you for all monies loaned to George E. Duteau to cover payrolls on said Jamaica-Winhall, Vt. contract, providing such procedure is agreeable

to the assignee, regardless of our obligations on other bonds for George E. Duteau. Any funds not necessary to reimburse you for said payrolls may be retained by us for our protection on such other obligations.

            "American Fidelity Company
            "By: s/ Clark B. Bristol
                    "Vice President"

19. That thereafter the defendant Atlantic Corporation loaned to defendant Duteau $33,279.50 to pay net payrolls, or, in other words, the take-home pay of the employees of defendant Duteau who were working on the Jamaica-Winhall highway project. Defendant Duteau still owes the defendant Atlantic Corporation $33,279.50, which is the amount loaned to defendant Duteau by defendant Atlantic Corporation for the take-home pay of the employees on the Jamaica-Winhall highway project.

20. There is due from the State of Vermont the sum of $25,229.09 under the terms of the contract of June 10, 1949, between defendant Duteau and the Vermont State Highway Department and the Vermont Highway Board. This sum is now due and has been due for some time, but the State of Vermont has refused to pay this sum to anyone until a final disposition or adjudication had been made regarding the priority and validity of the tax lien of the United States. The State of Vermont has further refused to issue any check or voucher to the plaintiff or anyone else.

21. The defendant Atlantic Corporation claims and agrees that $15,023.30 is due the plaintiff as claimed by the plaintiff, but disputes the following items of the plaintiff's $18,523.94 claim:

(a) $1,200.00 paid by it to Kenneth Jones as the Supervising Engineer to finish the highway job and secure its acceptance;

(b) $1,930.38 paid by it to its attorney, A. Luke Crispe, for services rendered by him in negotiating the adjustment of the truckers' claims against defendant Duteau, and for various negotiations with the Vermont State Highway Department which were made necessary because of the Highway Department's dissatisfaction with the progress and type of work on this highway.

(c) $370.26 for services and expenses of said Attorney Crispe in defending Duteau at the request of the plaintiff in the lawsuit brought by one Janet Hoadley Jacques for gravel.

## Conclusion of Law

The first question presented is this: Were the liens of the defendant United States for the income, withholding and FICA taxes assessed against defendant Duteau entitled to priority over the American Fidelity Company and defendant Atlantic Corporation?

The question is—Which of the contestants possessed a superior right to the funds held by the State of Vermont? The plaintiff asserts a lien in its favor which it claims originated on May 6, 1949. The defendant United States claims that it has a priority lien over the plaintiff's lien because of its tax lien notice filed in May of 1951. The defendant Atlantic Corporation supports the plaintiff's contention since, if the plaintiff's lien has priority over the United States' lien, its own lien, too, will have priority over the United States' lien.

It is the contention of the United States that the plaintiff's lien was at best an inchoate right which hadn't been perfected; that if it did attach to anything, it attached to the funds which remained in the hands of the State of Vermont after the final "sectioning" or accounting by its Highway Department; that by the theory of subrogation, the plaintiff gained only such rights as defendant Duteau had.

These arguments seem clearly untenable. The contract of suretyship which contained the subrogation agreement was signed by Duteau on June 7, 1949. On the 28th of June, 1949, notice of this subrogation assignment was filed with the Highway Department of the State of Vermont. Starting in June of 1950, the plaintiff advanced moneys under its contract of suretyship. It continued to make such advances until the construction job was completed and approved by the State of Vermont in December of 1950. Some time after this approval, but before May 14, 1951, the State of Vermont computed and ascertained the balance due and payable under the contract.

And finally, on May 14, 1951, the United States filed notice of its tax lien.

It seems basic to the law of suretyship that a surety who is called upon and makes good under its contract of suretyship upon default of its principal, or to prevent its principal being defaulted, acquires an equitable lien against any sum remaining in the hands of the one for whose protection the bond was given. Aetna Life Ins. Co. v. Town of Middleport, 124 U.S. 534, 8 S.Ct. 625, 31 L.Ed. 537, 541. This lien relates back to the date of the contract and is superior to any lien arising thereafter. Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, 419; New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473, 476. The question here involved is not one where the lien of the United States precedes the processes by which a surety's lien become choate, as the United States, in its brief, attempts to point out. Rather, every step of the normal routine of subrogation had been completed far in advance of the filing of the tax lien. In this case, the contract of suretyship had been signed. The surety had been called upon for performance. The surety had, in fact, performed. The surety had made its claim of subrogation by demanding the future payments and the withheld portions of the contract price. The State had acknowledged the rights of the plaintiff by making payments to it as surety for Duteau. The State accepted the completion of the contract and had determined the balance payable under that contract. All of these stages had been gone through before the United States filed its tax lien. Every requirement of a perfect subrogation had been completed by the plaintiff long before the filing of the tax lien. Any ruling which now gives priority to the lien of the United States would necessarily operate to alter and impair rights acquired by the surety under the original contract. Prairie State National Bank v. United States, supra.

What has been said above applies equally well to the claim of the United States, that the plaintiff acquired only such rights as Duteau had under this contract with the State of Vermont, and that until

Duteau acquired a specific right to the final payment due under this contract, the rights to which the plaintiff was subrogated were merely inchoate—all this because the State of Vermont had not ascertained the balance due prior to the filing of the tax lien by the United States. As stated above, the filing of the tax lien was the very last step in these proceedings, and the lien of the plaintiff had become perfected well prior thereto. But this argument is further without merit in that it assumes that plaintiff succeeds only to the rights of Duteau, if any he had. It is elemental that a surety does not assume the shoes of the debtor whose performance he assured—rather, he takes the position of the creditor who has been satisfied by the surety. Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48, 51; 50 Am.Jur., Subrogation, Sec. 110. Thus, even if Duteau had no rights against the funds now in controversy, this would not affect the position of the plaintiff. Therefore, this Court rules that the lien of the plaintiff is prior and superior to that of the United States.

The second question for decision is this: Is the plaintiff liable to the United States for Duteau's failure to pay withholding and FICA taxes, under the bonds it provided to the Highway Department of the State of Vermont?

██ The law of the State of Vermont which requires a prime contractor to furnish bonds for performance and for wages and materials has nothing in it to indicate that these bonds were in any way to cover such obligations as withholding and FICA taxes. Vermont Statutes, Revision of 1947, § 4909. The purpose of the performance bond was to make the contractor liable for default by reason of his inability to keep the contract or by reason of failing to meet the requirements and specifications as to material. The wages and materials bond required by the State of Vermont is to insure the contractor's liability for claims of subcontractors, materialmen and laborers. The bonds alone govern any liability which the surety might have.

Clearly, the Vermont Legislature intended to protect the State, its subdivisions, employees and materialmen who need such protection, and not the United States. The Vermont statute is similar—at least in spirit—to the Miller Act, 40 U.S.C.A. § 270a et seq. It is possible that the United States might have collected these taxes by filing a sworn statement with the Vermont Highway Department. Its failure to comply with this statutory requirement has barred it from any possible recovery under that statute. The statute creating such a right may impose conditions upon its exercise; these conditions are binding upon all, including the United States. General Casualty Company of America v. United States, 5 Cir., 205 F.2d 753.

Since the United States did not avail itself of the only possible method by which it could have held plaintiff liable under the bonds given the Vermont Highway Department (and the availability of this method to the United States in such a case is not a question here), this Court concludes that the plaintiff was not liable under either its performance bond or the wages and materials bond to the United States for withholding and FICA taxes withheld by the defendant Duteau from wages of his employees but not paid to the United States.

The third question presented is this: Was the American Fidelity Co. liable for taxes withheld from the employees of the defendant Duteau as an employer under Section 1621(d) (1) of the Internal Revenue Code, 26 U.S.C.A.?

██ Defendant Duteau was at no time actually in default on his prime contract. At no time did the plaintiff (as Duteau's surety) have control of the payment of wages, or the hiring or firing of the help who worked on the highway project. It cannot be classified as an employer. By aiding the contractor in the completion of his contract and by collecting sums from the State of Vermont, the surety merely exercised its contract rights under the bond. It did not make itself liable for any default of the principal, since in this case there was no default of the principal. When an employer withholds the tax from an employee's wage and pays him the balance, the employee has been paid in full. The employer then has a tax liability, and he alone is liable to the United States for

this. United States Fidelity & Guaranty Co. v. United States, 10 Cir., 201 F.2d 118, 120. Nor do the surety bonds furnished by the plaintiff to defendant Duteau furnish the United States any solace on this claim. They cannot be construed to include this claim of the United States. Such construction would require the plaintiff—or any such surety—to police the assured's accounting and payment system; it would increase the risk to the surety, increase the difficulty of the contractor in financing, and generally increase the cost of construction. This Court rules that the plaintiff was not liable for the taxes withheld from the employees of defendant Duteau, as an employer under Section 1621(d) (1) of the Internal Revenue Code.

Having ruled against the United States on its claims, the final question to be disposed of is: How much of the $25,229.09 now held by the State of Vermont, which represents the final payment due under the construction contract, goes to the plaintiff and how much to the defendant Atlantic Corporation?

■ The defendant Atlantic Corporation concedes that the plaintiff is entitled to $15,023.30 of that sum. It claims, however, that the plaintiff is not entitled to three additional items to which the plaintiff maintains it is entitled. These items are: First, $1,200 paid by the plaintiff to one Kenneth Jones for salary as the Supervising Engineer on the project for a short period of time prior to and at the completion of the project. It is true that Jones was selected by the plaintiff as a competent engineer to supervise the completion of the project. It is true that he was paid the sum of $1,200 for these services by the plaintiff. However, Jones could not have taken over the position of Supervising Engineer without the consent of defendant Duteau. Duteau was not in default on his contract. His was the sole right of hiring and firing. He did oust his own father as Supervising Engineer and at least consented to Jones taking over. Thus Duteau became the employer of Jones and was liable to Jones for the fair value of his services. This fair value is found by the Court to be $1,200, and the plaintiff, having paid that sum, is entitled to reimbursement.

■ The second item in dispute is one of $370.26. This was a legal bill incurred by counsel who defended defendant Duteau in a civil action brought in the State Courts of Vermont by the owner of a gravel bank. It was for gravel purchased by contractor Duteau for use on the work. In that suit, the plaintiff claimed the amount due to be $2,000 (although the plaintiff's specification prior to trial set the amount at $1,700). This figure was regarded as highly excessive by Duteau and trial was had before a jury. It does not appear from the record whether this case was actually decided by the jury or whether a settlement was reached. In any event, the amount paid to the plaintiff in that action was $857, substantially less than the ad damnum therein. For his efforts in effecting this reduction of the claim, Duteau's attorney was paid in the amount of $370.26 by the American Fidelity Co. The Court finds that such was a reasonable expense. The defendant Atlantic Corporation admits that the amount paid for defendant Duteau by the plaintiff for the gravel as fixed either by the jury or by settlement, is an amount fairly recoverable by the plaintiff in this action, and this Court can see no reason why the attorney that it paid to defend defendant Duteau, at Duteau's request, should not come under the same category.

The final item in dispute is a bill for services by an attorney hired by the plaintiff when it appeared that there was to be trouble between defendant Duteau and the Highway Department of the State of Vermont over this contract. This attorney rendered sundry services for the plaintiff in carrying on negotiations with the State Highway Department and the plaintiff and between Duteau and the plaintiff. The attorney's bill for services amounted to $1,903.38. While I find this bill to be a reasonable bill for the services rendered, I am unable to find that it is an item that is properly chargeable by the plaintiff to the defendant Duteau, or is an item that can in any way be included in the equitable lien held by the plaintiff and the funds still held by the State of Vermont.

It is therefore adjudged that there is now due and payable from the State of Vermont the sum of $25,229.09 as a result of the highway contract hereinbefore referred to. The State of Vermont is ordered to deposit this sum of money with this Court on or before September 21, 1953, and upon doing so, its obligations under the contract hereinabove referred to shall be completed.

It is further adjudged that of the sum of $25,229.09, the plaintiff shall be paid $16,593.56 and the defendant Atlantic Corporation shall be paid $8,635.53.

Let judgment be entered accordingly.