Hofstadter, J.
In these two actions, tried on a single agreed statement of facts, the court is called upon to determine whether the plaintiff’s lien on funds in the hands of the New York City Housing Authority is superior or subordinate to that of the United States for unpaid taxes. The same question is presented in the two cases, the only factual difference being that each case grows out of a separate housing project contract.
On October 28, 1949, Horticultural Service, Inc., contracted with the Housing Authority to landscape the Charles W. Berry housing project. On January 24, 1950, it entered into a like contract for the Lester W. Patterson housing project. To meet the bond requirements of these projects, Horticultural as principal and the plaintiff as surety on November 29,1949, executed a performance bond for $93,335 on the Berry project, and on February 6,1950, executed a like bond for $91,755 on the Patterson project. During the course of the erection of the projects Horticultural, as required by law, withheld from the wages of its employees, amounts to cover their income tax and tax contributions to the Federal old age and retirement program. Horticultural failed to pay over to the United States the tax moneys so withheld and the lien for these unpaid taxes is that now asserted by the United States.
Simultaneously with the execution of each of the two performance bonds Horticultural delivered to the plaintiff an “ application for contract bond and agreement of indemnity ”, the instrument on which the plaintiff bases the lien for which it claims priority. By it Horticultural, as of its date, subrogated the plaintiff to all Horticultural’s rights in the contract with the Housing Authority and assigned to the plaintiff all deferred payments and retained percentages arising out of it, and any moneys that might become due and payable on account of the contract or extra work.
The plaintiff, pursuant to the terms of the performance bonds, on and after March 19, 1951, paid various obligations incurred by Horticultural on the Patterson project, and on and after April 12, 1951, made similar payments on the Berry project. *958 The plaintiff’s claimed lien is to secure the repayment of the moneys so paid out. The Housing Authority now holds a balance of $1,860.75 due on the Patterson and a balance of $9,444.02 due on the Berry project, which it is ready to pay over to the party held entitled thereto.
The assessment lists for the unpaid taxes were received by the collector at various times between December 12, 1949, and May 29,1952. The taxes for which assessment lists were received before the plaintiff made its payments to Horticultural’s creditors aggregate more than the fund held by the Housing Authority, so that if the lien of the United States is held entitled to priority, its lien will exhaust the fund in dispute.
The United States Internal Revenue Code (U. S. Code, tit. 26), provides that the lien for unpaid taxes arises at the time the assessment list was received by the collector (§ 3671). This lien, however, is not valid as against a mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed in accordance with the law of the State where the property subject to the lien is situated, whenever the State has by law provided for the filing of such notice (§ 3672).
The plaintiff claims that its lien arose immediately on the execution of the indemnity agreements on November 29, 1949, and February 6,1950. If this contention is upheld the plaintiff has priority, for with the exception of an insignificant item of $331.30, received on December 12, 1949, all the tax assessments were received by the collector after February 6, 1950. The plaintiff relies on United States Fidelity & Guar. Co. v. Triborough Bridge Auth. (297 N. Y. 31, decided in 1947). The situation there was substantially identical with that here and the doctrine laid down in the United States Fidelity & Guar. Co. case, if still prevailing, would dispose of this case. The Court of Appeals held in the United States Fidelity & Guar. Co. case that the surety company which had made payments under its performance bond was subrogated to all the rights of the authority against the contractor, including the right to withhold money due and that “ the equity in the surety’s favor arose at the time it gave its bond, although the right became available and enforcible when it carried out the contract’s provisions ” (pp. 35-36).
Decisions of the Supreme Court of the United States rendered since the United States Fidelity •& Guar. Co. case, in my opinion, require the ruling here that the tax liens are entitled to priority. • By virtue of the Internal Revenue Code those liens arose when the assessment lists were received. Unless the plaintiff had perfected its lien before that time, the plaintiff *959 may not prevail. If the plaintiff’s lien was still inchoate when the tax lien arose, the tax lien is superior. This is the clear effect of the cases (United States v. Security Trust & Sav. Bank, 340 U. S. 47; United States v. Gilbert Associates, 345 U. S. 361; United States v. Acri, 348 U. S. 211; United States v. Liverpool & London Ins. Co., 348 U. S. 215; United States v. Scovil, 348 U. S. 218; United States v. Kings Co. Iron Works, 224 F. 2d 232). These cases declare that the relative priority of the lien of the United States for unpaid taxes presents a Federal question to be determined by Federal law. Only a perfected lien is superior to the tax lien and a lien perfected after the tax lien has accrued may not be related back to an earlier date when the lien was still inchoate. That is the situation here. The lien upheld in the United States Fidelity & Guar. Co. case (297 N. Y. 31, supra) was treated as an equitable lien, derived from the indemnity agreement. An equitable lien has always been regarded as inchoate and it is necessarily so in this case, where the fund against which the lien is claimed to have attached did not come into existence until months after the execution of the indemnity agreement. Moreover, the lien was not specific, but general, and uncertain in amount, dependent on the payments, if any, which the plaintiff might be called upon to make in compliance with the performance bond. That is the very kind of lien which the Federal law declares must yield to the perfected tax lien. The Federal cases hold also that a party in the position of the plaintiff is not a purchaser entitled to invoke section 3672 of the Internal Revenue Code (United States v. Scovil, 348 U. S. 218, 221, supra; United States v. Kings Co. Iron Works, 242 F. 2d 232, 237, supra). It follows that the tax liens must be adjudged superior.
In view of the foregoing, it is unnecessary to deal with the further contention of the United States that the plaintiff is contractually bound by the performance bond to pay the taxes.
The foregoing constitutes the decision in the case. Settle judgment accordingly.