**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**NEW YORK CITY HOUSING AUTHORITY, Caruso-Sturcey Corporation, Arnold Lewis, as Assignee of Caruso-Sturcey Corporation, People of the State of New York, and United States of America, Defendants.**

United States District Court
S. D. New York.
April 18, 1956.

Maurice, McNamee & Dart, New York City, for plaintiff. Stewart Maurice, Robert F. Dart, New York City, of counsel.

Irving Wise, New York City, for defendant New York City Housing Authority.

Jacob K. Javits, Atty. Gen. of New York, for defendant People of State of New York. Samuel Backlar, Asst. Atty. Gen., of counsel.

Paul W. Williams, U. S. Atty., for Southern Dist. of New York, New York

City, for the United States. Maurice N. Nessen, Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

Fidelity and Deposit Company of Maryland, surety on the bond of Caruso-Sturcey Corporation, a building contractor, brings this action to recover the sum of $46,392.51 from defendant New York City Housing Authority, hereinafter referred to as the owner. That sum is an amount equal to the unpaid balance of the contract price for heating and ventilating work that the contractor agreed to do at Ravenswood Houses. By its agreement with the owner, the building contractor had engaged not only to do the required construction but also to pay its laborers and materialmen. However, while it completed the construction, it failed to pay all the laborers and materialmen. Because of this default, the owner withheld final payment pursuant to a requirement of the contract. The surety on the contract, pursuant to the obligation of its bond, paid the laborers and materialmen. The surety seeks reimbursement of the amount it paid to them.

Defendant United States of America asserts a claim to the withheld funds because of tax liens against the property of the contractor.

Granting recovery to either the surety or the Government will exhaust the withheld funds. Since the owner must not be required to pay twice, the question here presented is as to the relative superiority of the respective claims of the surety and the Government against the owner.

The Government's right to a lien is created by section 3670 of the 1939 Internal Revenue Code, 26 U.S.C. § 3670, which reads as follows:

"§ 3670. *Property subject to lien.*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such

tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

The period of the Government's lien is fixed by section 3671, 26 U.S.C. § 3671, which reads as follows:

"§ 3671. *Period of lien*

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

Section 3672(a), 26 U.S.C. § 3672(a), makes the Government's lien invalid against a subsequent mortgagee, pledgee, purchaser, or judgment creditor unless notice thereof has been filed by the collector. It reads:

"§ 3672. *Validity against mortgagees, pledgees, purchasers, and judgment creditors*

"(a) *Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector * * *."

The chronology is as follows:

The contract and the surety bond were executed before any payments by the surety to the contractor's laborers and materialmen and before any of the Government's liens accrued. The surety's payments to the contractor's laborers and materialmen were made during the period from December 11, 1950, to November 13, 1951. The Government's liens accrued during the period from April 4, 1950, to September 12, 1951. It thus appears that, if the relative rights of the surety and the Government depend upon the chronology of the surety's payments to the laborers and materialmen and of the accrual of the liens of the Government, the method of determining the respective amounts due would be

to arrange the payments of laborers and materialmen and of tax liens in a single list in chronological order and to allocate a sufficient amount to meet each payment of a creditor and each tax lien beginning with the oldest until the withheld funds were exhausted.

█ The surety argues that, when a surety, at the request of the contractor, agrees with the owner to make good the default of the contractor, there is an implied term of the arrangement between the three that the owner will pay to the surety any part of the unpaid contract price necessary to reimburse the surety for his expenditures in making good the contractor's default. Thus, under the terms of the arrangement, the surety's rights would not be derivative through the contractor but direct against the owner. The property competed for would not be the property of the contractor at all. The surety would not have a lien on the chose in action. A claimant against the contractor, like the Government here, would have no standing to assert rights against this chose in action running directly from the owner to the surety. Thus no questions of priority or "relating back" would be involved.

The Supreme Court in United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, has expressly rejected this theory that a surety is the promisee of a promise by the owner to reimburse him out of withheld funds for expenditures made in fulfillment of his obligation to make good the default of the contractor in failing to pay laborers and materialmen. In the Munsey Trust case a contractor had failed to carry out its obligation to pay its laborers and materialmen in accordance with its contract with the Government which occupied the position of owner in that case. The surety had paid the laborers and materialmen and sought to recover retained percentages from the Government. The Government pleaded as set-offs sums due from the contractor on account of breaches of other contracts. The surety urged the very point here under discussion saying that there was a direct prom-

ise by the Government to the surety which could not be affected by any sum owed by the contractor to the Government under some other contract. The court rejected the argument saying, 332 U.S. at page 243, 67 S.Ct. at page 1604:

"Respondent's contention then comes to this: that by requiring the contractor to furnish assurances that he will perform his obligations to laborers and materialmen, the government has deliberately decreased the ordinary safeguards it would have had to enforce the contractor's obligations to it. We see nothing in the words of the contract or the statute to lead us to this conclusion."

The owner certainly could not have set off against the obligation to pay the withheld cash a debt due from the contractor as permitted in the Munsey Trust case if, as the surety here contends, the obligation ran direct to the surety.

█ The surety advances another theory under which, as is asserted, the contractor would be without any interest in the withheld funds to which the Government tax liens could attach. It is contended that, at the time of the accrual of the Government's tax liens against the contractor, the contractor, not having paid his laborers and materialmen, had no right to the withheld funds.

The answer is a short one. The contractor's right to the withheld funds, even though conditioned upon acts which the contractor had not performed, was nevertheless an existing right albeit subject to the condition. The Government tax liens attached to it. If the surety is protected here it is not because the lien did not attach to the contractor's interest but because the contractor's interest was subordinate to that of the surety.

We are thus brought to the question of the nature of the interest of the surety. I have already decided that the surety has no rights of its own to the withheld fund. That leaves three parties through

whom the surety might have derivative rights: the contractor, the laborers and materialmen, and the owner.

■■ The surety has no derivative rights through the contractor. A surety's only right against his principal is indemnification. That is a simple chose in action against the principal which gives the surety no property right in any part of the principal's property. United States Fidelity & Guaranty Co. v. Centropolis Bank, 8 Cir., 17 F.2d 913, 53 A.L.R. 295.

■ The surety has no derivative rights against the withheld funds through the laborers and materialmen. When the surety pays them he is subrogated to their rights against the contractor. Again, however, these are simple choses in action which give no property interest in any of the assets of the contractor. United States v. Kings County Iron Works, Inc., 2 Cir., 224 F.2d 232.

■ That leaves the question whether the surety has any rights against the withheld funds through the owner. A surety who has performed his undertaking is subrogated to the rights of the creditor. As Chancellor Kent said in Hayes v. Ward, 4 Johns, Ch., N.Y., 123, 130, "a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor, and have his securities transferred to him, and to avail himself of those securities against the debtor." In the instant case the question arises as to who the "creditor" is, the owner to whom the principal's promise was made or the laborers and materialmen for whose benefit it was made, or both the owner and the laborers and materialmen. It may be plausibly argued that the owner is a creditor within the meaning of the rule as to security and that a surety who had performed his obligation would be entitled to any security that the owner held for the performance of the contractor's obligation. It may be further plausibly argued that funds withheld by the owner, as required by the contract where the contractor fails to pay his laborers and materialmen, constitute security for the purposes of subrogation. Those arguments were adopted by the Supreme Court in two cases.

In Henningsen v. U. S. Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 392, 52 L.Ed. 547, a surety had given to the owner a bond to pay laborers and materialmen. The contractor, pending the performance of the contract, borrowed money from a bank and gave an assignment of the moneys to become due under the building contract. The contractor completed the construction but left unpaid laborers and materialmen and the surety then paid them in accordance with the terms of his bond. The surety claimed a specific right to reimbursement from the balance unpaid under the building contract. The Supreme Court upheld the surety, citing as in point Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, where a surety's "subrogation" was held to relate back to the execution of the original contract. Mr. Justice Brewer quoted, and expressed agreement with, the opinion of the court below which had said that the surety was "entitled to assert the equitable doctrine of subrogation".

Applying these arguments to the case at bar, it might be said that the surety here would be subrogated to any rights which the owner had against the contractor to retain the funds and also subrogated to the rights which the laborers and materialmen had against the contractor. Armed with these two sets of rights he might be thought to be in a position better than even the owner himself since the owner had security for performance by the contractor but was owed no debt by the contractor. The surety would have not only the security but the right to recover upon the debt which it secured.

If this line of argument were accepted, the surety's claim to the withheld funds would be superior to the Goverment liens. The Government liens extended only to the interest of the contractor. By hypo-

thesis this interest was only the equity of redemption of the security it had furnished. When this equity was cut off nothing would remain to satisfy the liens.

The argument runs head on, however, into recent authority. The court made it plain in United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, supra, that the law relating to security cannot be applied to the unpaid balance in the hands of the owner. There the owner held a balance under a provision of the contract for the retention of 10% of the progress payments and the court, in answer to an argument such as above outlined said 332, U.S. at page 243, 67 S.Ct. at page 1603, "we are not prepared to apply law relating to security to unappropriated sums which exist only as a claim."

My view that the Government tax liens are superior to any interest of the surety is supported by only one case, Aetna Casualty & Surety Co. v. Horticultural Serv., Sup., 147 N.Y.S.2d 422, decided by Justice Hofstadter. On the other hand, plaintiff has cited many where the surety's rights have prevailed.[1] The opinions in all but one of them were either filed before the Munsey Trust case or failed to mention it. The opinion which mentioned it, U. S. Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226, distinguishes it from a case like that at bar on the ground that in the Munsey Trust case the fund held by the owner was "necessarily reduced" by the debts owed to the owner by the contractor. I cannot accept the premise. Such a reduction is far from "necessary". Indeed, if the owner in the Munsey Trust case had thus reduced the fund, it would, in effect, have paid out the 10% which was to be withheld under the terms of the agreement and, as a result, would even under the federal law have discharged the surety. Globe Indemnity Co. v. Southern Pac. Co., 2 Cir., 30 F.2d 580. Thus, the Munsey Trust case is not based on any "necessary" reduction of the withheld fund by setoff but, just as the opinion said, upon unwillingness to "apply law relating to security to unappropriated sums which exist only as a claim."

Even though the transactions involved in the case at bar took place in New York the Triborough case is not controlling authority. The question of priorities where federal tax liens are concerned is one of federal law. United States v. Kings County Iron Works, Inc., 2 Cir., 224 F.2d 232, 235, supra.

Since there is thus no theory on which the surety in this case can be held to have a property interest in the withheld funds there is no occasion for discussing priorities. All the Government tax liens are superior to the claims of the surety, even those liens which accrued after payment of the laborers and materialmen by the surety.

The State of New York as well as the Government seeks to assert tax liens in this case but, since they are admittedly subordinate to federal liens and the federal liens exceed in amount the withheld funds, there is nothing for the State.

Judgment will be rendered for the Government.

The foregoing opinion is intended to embody conclusions of law. Since the case was tried upon an agreed statement of facts no findings would seem to be necessary. If any are desired proposed findings may be submitted.

1. Glenn v. American Surety Co., 6 Cir., 160 F.2d 977; United States Fidelity & Guaranty Co. v. United States, 10 Cir., 201 F.2d 118; United States v. Zschach Const. Co., 10 Cir., 209 F.2d 347; New York Casualty Co. v. Zwerner, D.C.N.D. Ill.E.D., 58 F.Supp. 473; F. H. McGraw & Co. v. Sherman Plastering Co., D.C.D. Conn., 60 F.Supp. 504; America Fidelity Co. v. Delaney, D.C.D.Vt., 114 F.Supp. 702; Great American Indemnity Co. v. United States, D.C.W.D.La.Alex.Div., 120 F.Supp. 445; Alabama-Tennessee Nat. Gas Co. v. Lehman-Hoge & Scott, D.C.N.D.Ala.N.W.Div., 122 F.Supp. 314; U. S. Fidelity & Guaranty Co. v. Triborough Bridge Auth., 297 N.Y. 31, 74 N.E. 2d 226.