145 F.Supp. 844 (1956)
COLUSA-GLENN PRODUCTION CREDIT ASSOCIATION, a California Corporation, Plaintiff,
v.
PHOENIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a Connecticut Corporation; James C. Berlinger et al., Defendants,
United States of America, Plaintiff in Intervention.
No. 33942.
United States District Court N. D. California, S. D.
August 2, 1956.
Cushing, Cullinan, Duniway & Gorrill, San Francisco, Cal., for plaintiff.
Laughlin, McKalson & Crable, Chico, Cal., Hewitt & McBride, Yuba City, Cal., Manwell & Manwell, Arthur S. Powell, Marysville, Cal., Ira B. Langdon, Stockton, Cal., for defendants.
Lloyd S. Burke, U. S. Atty., San Francisco, Cal., for plaintiff in intervention.
EDWARD P. MURPHY, District Judge.
This is an action under 28 U.S.C. § 1335 by the holder of certain funds, amounting to $12,411.40 and now deposited in the registry of this Court, for a determination of the respective rights in that sum of the United States and a surety, the Phoenix Insurance Company of Hartford, Connecticut.
The surety issued its bond to guarantee the performance of a building contract by one Berlinger, a contractor. *845 The other party to the contract was the Colusa-Glenn Production Credit Association, hereinafter called owner. The bond was executed on November 21, 1953, and the building contract on November 27, 1953. The contract provided for the usual ten per cent withholding provision until completion of the entire job, and for progress payments upon architects' certificates only. The contract further provided that time was of the essence and that the building was to be completed by May 24, 1954.
Pursuant to this contract, the owner paid to the contractor approximately $46,000 prior to June 1, 1954. On that date, the contractor was in default in several respects, including the time provision in the contract. The government filed a notice of tax lien upon the owner on June 1, 1954, and several days thereafter the contractor left the job altogether and did no further work. On June 1, 1954, no amount of money was due and owing to the contractor under the contract, whether as withheld portions, or as portions of the contract price certified for payment by the architects.
The surety now stepped in and performed its obligations to the owner under its bond. It paid off certain liens and arranged for the completion of the job by another contractor, thereby incurring costs in excess of the withheld sum of $12,411.40. Upon completion of the job, the surety made demand upon the owner for the remainder of the contract price. In view of conflicting demands made by the United States, the owner filed this suit.
The United States bases its claim upon tax assessments becoming effective as liens upon any property of Berlinger on the following dates and in the following amounts: 11/18/53, $6,952.32; 2/8/54, $1,820.40; 6/3/54, $657.95. These assessments were received in the office of the Collector on the dates and in the amounts indicated, and therefore became liens against "all property and rights to property * * * belonging to such person", here Berlinger. 26 U.S. C. §§ 3670-3672.[1]
The United States urges its claim as being prior to any liens not perfected in the manner provided by 26 U.S.C. § 3672(a). Under recent Supreme Court decisions, there seems to be no doubt that a federal tax lien is superior to a surety's general claim arising out of the equitable doctrine of subrogation. See, for examples of liens inferior to federal tax liens because not sufficiently perfected, United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271; United States v. Liverpool & London & Globe Insurance Co., Ltd., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; and Phoenix Indemnity Co. v. Earle, 9 Cir., 1955, 218 F.2d 645.
However, all of these cases determine the priority of federal tax liens where there is some property of the taxpayer, or rights to property, to which such liens may attach. In the Acri case, supra, the property was cash and bonds unquestionably belonging to the taxpayer. In the *846 Scovil case, supra, the property was a fund resulting from sale of assets of the taxpayer corporation. In the Liverpool case, supra, the property was an insurance fund, again unquestionably the property of the taxpayer. In the Security Trust case, supra, the property was four parcels of real estate belonging to the taxpayer. In the Phoenix case, supra, the court specifically found that the taxpayer had not defaulted under the contract, 218 F.2d 645, at page 647; the inference is plain that the rights to property to which the federal tax lien attached in that case were the sums owing to the contractor by reason of his substantial performance of the contract.
Likewise, two recent cases cited by the government after oral argument, dealing with the priority of federal tax liens as against the surety's claim to funds withheld under a building contract, must be read as deciding questions of priority only, without resolving the issue of whether the contractor in circumstances such as those present here has any rights to property to which the government liens can attach. This Court finds itself in agreement with the opinion of Justice Hofstadter in Aetna Casualty & Surety Co. v. Horticultural Service, Inc., Special Term, N. Y. County, 1956, 1 Misc.2d 956, 147 N.Y.S.2d 422. In that case, no mention is made of the default of the contractor there involved, and it must be assumed that the property rights disputed were rights to money under a building contract substantially performed. The other case cited, Fidelity & Deposit Co. v. New York City Housing Authority, D.C.S.D.N.Y.1956, 140 F.Supp. 298, contains an express finding by Judge Dimock that the contractor completed the construction. See 140 F. Supp. 298, at page 300. The sole default there was that the contractor had failed to pay all the laborers and materialmen, as he had contracted with the owner to do. The surety in that case contended that the contractor, not having paid his laborers and materialmen, despite the fact that he had finished the building, had no right to the withheld funds. To this, Judge Dimock replied:
"The answer is a short one. The contractor's right to the withheld funds, even though conditioned upon acts which the contractor had not performed, was nevertheless an existing right albeit subject to the condition. The Government tax liens attached to it. If the surety is protected here it is not because the lien did not attach to the contractor's interest but because the contractor's interest was subordinate to that of the surety." Id. at page 301.
The issue confronting us here is whether Berlinger, the contractor, had any rights to the sums withheld by the owner after June 1, 1954. Unlike the contractor in the Fidelity Deposit case, supra, Berlinger here committed a breach which must be held to go to the essence of the contract. He was in default with respect to the element of time of completion, provided in the contract to be of the essence. He was in default with respect to payments to his sub-contractors and others. And if these violations of his duties under the contract leave any doubt as to whether they were such a breach of his contract as to dissolve the contract altogether and forfeit his conditional rights under the contract, the fact that he walked off the job completely and never finished the work resolves that doubt. Within a few days of June 1, 1954, Berlinger effectively severed himself from any conditional rights he may have had under the contract up to that time. He could no longer have returned to the job and offered to perform, with the consequent power to hold the owner to the original contract. The owner could have refused such an offer in view of the previous breach by Berlinger. Therefore, there were no rights to property in the withheld funds left in Berlinger within the meaning of Judge Dimock's opinion in the Fidelity Deposit case, supra, and no government liens could attach to them.
Substantially the same issue faced the court in Great American Indemnity Co. v. U. S., D.C.Vt.1954, 120 F.Supp. 445. The Court there based its ruling on two *847 alternate grounds. The first of these has been overruled by the Supreme Court cases discussed above. The second ground was expressed by the Court in the following language:
"But, there is another feature in this case that, in our opinion, is totally decisive. In the Supreme Court decisions herein cited and relied on by the government, we find one constant factor. In each of those cases, the liens (federal and others) attached to property belonging to the defendant debtor, property that was his all the time. Such is not the case here. The government's debtor here is the contractor, who did not get the money.
"It is not necessary to rely on the so-called `equitable doctrine of relation back.' United States Fidelity & Guaranty Co. v. U. S., 10 Cir., 1952, 201 F.2d 113, 121. It suffices to say that the rights of the Internal Revenue Collector can rise no higher than those of its debtor whose right to property is sought to be levied upon. Alexandria Insulation Company forfeited its rights to the fund prior to the filing of the tax lien. It had no right to the fund. Therefore, the government does not. New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473." Id. at page 451.
And, again in what seems to be an alternate ground for decision although not specifically so denominated, the Court of Appeals for the 10th Circuit, in United States Fidelity & Guaranty Co. v. U. S., 10 Cir., 1952, 201 F.2d 118, a case similar to the one at bar, said, referring to the case of United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53:
"It is to be noted that both liens attached to property belonging to the defendant debtor, property that was his at all times. Such is not the case here. On the date of the execution of the subcontract the prime contractor had a specific right of ownership in any funds accruing to the subcontractor from the performance of his subcontract. The right to withhold these funds upon default was superior to any other claim against the fund as the property of the subcontractor. When the subcontractor defaulted and its surety, the appellant in this case performed it stepped into the shoes of the prime contractor and was subrogated to all rights that it held against the subcontractor. Those rights related back to the date of the subcontract and were effective from the date thereof. This was in point of time prior to the perfection of the Government's tax liens. Actually the defaulting subcontractor had no right to this fund. It owed the principal contractor more than was due to it from such principal contractor. As between the Government and appellant surety who stepped into the shoes of the principal contractor, the Government could acquire no greater right to this fund than the subcontractor had." 201 F.2d 118, at pages 121-122.
The surety's claim to the withheld funds is a question entirely apart from the issue of priorities, of course. It rests upon the doctrine of equitable subrogation that where a surety performs under a performance bond after the default of the contractor, it is entitled to an equitable lien on funds previously withheld by reason of the contractor's default, at least to the extent of the surety's expenses. See Lacy v. Maryland Casualty Co., 4 Cir., 1929, 32 F.2d 48 (see especially the discussion on pages 51-53); Farmers' Bank v. Hayes, 6 Cir., 1932, 58 F.2d 34; American Fidelity Co. v. Delaney, D.C.Vt.1953, 114 F.Supp. 702, at page 711; United States Fidelity & Guaranty Co. v. U. S., supra, 201 F.2d at page 122.
It is to be noted that this equitable doctrine is additional to and distinct from other rights of subrogation which the surety may have, be they derivative from the labor and materialmen it paid *848 off, or derivative from the owner's rights against the contractor, if any. Some confusion was doubtlessly engendered by failure of counsel to distinguish among the several equitable doctrines of subrogation which may be involved in any complex fact situation. Also, counsel for the surety seems to have taken too optimistic a view of the effect of American Surety Co. v. Bethlehem National Bank, 1941, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241, relating to the subrogation of the surety to the creditor's remedies on the money claim against the debtor, Id., 314 U.S. at page 317, 62 S.Ct. at page 228, on the rights of the surety in this case. In any case, the surety's right to the funds is a question entirely apart from the susceptibility of the funds to the federal tax liens. I have held that the funds are not so susceptible. No priority doctrine can make them otherwise, of course.
Let the sum of $12,411.40 now in the registry of this Court be paid to the surety.
NOTES
[1] "§ 3670. Property subject to lien. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"§ 3671. Period of lien. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.
"§ 3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors. (a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector * * *."